## MACKENZIE v. A. ENGELHARD & SONS CO.

## A. ENGELHARD & SONS CO. v. MACKENZIE.

(Circuit Court of Appeals, Sixth Circuit. February 6, 1923.)

Nos. 3581, 3582.

1. **Corporations** ⊜—123(10)—**Damages reasonable in suit to have stock issued to pledgee or for alternative relief determined.**

A plaintiff, who does not rely on his strict legal rights, but asks special relief from a court of equity, subjects himself to the equitable discretion of that court, and may be denied some measure of his legal rights, if to grant them all would be distinctly inequitable; hence, where plaintiff, assignee of pledgee of corporate stock, sued in the state court to foreclose his lien on the stock, and decree being rendered in defendant's favor, with provision allowing defendant to withdraw the stock certificate from the files, plaintiff appealed, but neglected to obtain supersedeas, whereupon defendant withdrew the certificate, and had the company issue two new certificates in place thereof, which, however, did not pass to purchasers without notice, and later, on the appeal, the decree was reversed and a lien sustained on the stock, and a sale to enforce it ordered, and at sale of the stock plaintiff bid it in for a nominal price, and later sued the company in the federal court in equity to have stock certificates issued to

⊜—For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

him, or in the alternative, for the value of the stock and for dividends paid to the nominal holders since his foreclosure sale, *held*, that plaintiff was entitled, as damages against the corporation, to only the amount necessary to discharge a lien on the stock for his debt and interest, including the costs of the state court proceedings up to the time of the decree of the trial court directing a sale, but not thereafter.

2. **Corporations ☞123(10)—Transfer and reissue of stock, without saving pledgee's lien, known to corporation, renders corporation liable.**

Where a corporation, although knowing of a pledgee's lien on certain stock, transferred and reissued the stock without saving his lien, and the reissued certificates were held by purchasers with knowledge, the contention that such wrongful reissue was without damage to the pledgee, because the lien still existed as against purchasers with knowledge, and that it was the pledgee's duty to pursue the purchasers, bring them into court and attempt to enforce his lien, could not be sustained, but, whether the corporation be held as for a conversion or on the ground of negligence as a trustee, it was liable to the rightful owner in damages, and he was not obliged to pursue the purchasers.

Appeals from the District Court of the United States for the Western District of Kentucky.

Suit by Louis B. Mackenzie against the A. Engelhard & Sons Company. From decree awarding less relief than prayed for, both parties appeal. Decree set aside, and case remanded.

Eschmann owned 130 shares of stock in the Engelhard Company—a Kentucky corporation (hereafter called the company). He became surety upon a note for $7,500, and he delivered to the payee, as collateral security, the certificate for this stock. Mackenzie later purchased this note. It provided for a lien upon the stock by way of security, but the certificate was not indorsed in blank or otherwise by Eschmann. Thereafter Mackenzie brought suit in a Kentucky equity court to collect his debt against Eschmann, and to foreclose his lien upon the stock. He filed the certificate in the court as an exhibit to his complaint. Eschmann defended on the ground that he had been defrauded into giving the note, and that Mackenzie was not a good-faith purchaser. The chancellor sustained this defense, and the decree in Eschmann's favor included a provision that he might withdraw the certificate from the court files. Mackenzie promptly appealed, but did not take the steps necessary to supersede the decree. Accordingly Eschmann withdrew the certificate; surrendered it, and the company issued two new certificates in place thereof—one for 105 shares to Eschmann's wife and one for 25 shares to his attorney. The company and its president had full knowledge of Mackenzie's claim and of the pending suit, and it is not shown that either the attorney or the wife was a purchaser without notice. Shortly thereafter the 25 shares were transferred and reissued to Mr. Engelhard, the president of the corporation.

In due course the appeal was heard, and the Court of Appeals decided that Mackenzie was a good-faith purchaser. Accordingly it reversed the decree, sustained the lien upon the stock, directed that Mackenzie should have judgment for his debt and that his lien should be enforced by a sale of the stock. The chancery court thereupon entered judgment and an order of sale. The sale was had before a commissioner, and the stock was bid in by Mackenzie; but the attorney for the Eschmann-Engelhard interests gave notice at the sale that nothing would pass, and so it was bid in for a nominal price. The sale was duly confirmed, and the commissioner ordered to execute an efficient bill of sale or transfer, and he did so. Mackenzie presented to the company the bill of sale and demanded a certificate for the 130 shares. The company refused, on the ground that valid certificates for this stock were outstanding and it could not overissue its capital stock. Mackenzie thereupon brought this suit upon the equity side of the court below, asking that the company be required to issue this certificate to him, or, in the alternative, that he have

judgment against the company for the value of this stock (which value was stipulated) and for the dividends paid to Mrs. Eschmann and Engelhard since Mackenzie's foreclosure purchase. The court below held that Mackenzie was entitled to a judgment against the company for the amount of his lien, with interest, and for the dividend which had been paid out of the earnings which had accrued subsequent to Mackenzie's purchase, but denied further relief. Both parties appeal. Mackenzie complains that he should have had either the certificate or its full value, and also all dividends declared after its purchase; the company complains that any decree was rendered against it.

Wm. Marshall Bullitt, of Louisville, Ky. (Samuel B. King, of Chicago, Ill., on the brief), for Mackenzie.

R. A. McDowell, of Louisville, Ky. (Booth, McDowell & Conner, of Louisville, Ky., on the brief), for A. Englehard & Sons Co.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge (after stating the facts as above). [1] We have no doubt that, in spite of the withdrawal of the certificate from the court files, the state court retained jurisdiction over the subject matter sufficiently to decree a foreclosure sale valid as between the parties, and for the purpose of this opinion, and without undertaking to decide the questions involved, we assume that the foreclosure of the lien upon the stock was so completely valid that, as against both Eschmann and purchasers pendente lite, Mackenzie acquired the legal title to the stock, and that in an action at law against the corporation for its refusal to reissue the stock to him, he would be entitled to recover full damages. Mackenzie has not brought such an action. He has applied to a court of equity for what would be, in effect, a mandatory injunction compelling the issuing of the stock certificate to him, and asking in the alternative that if a new certificate cannot be lawfully issued to him, the value of the stock should be ascertained and the Company directed to pay him that value. His primary effort is to get the specific article, the stock, which on account of prospective earnings, or voting power, may seem worth to him much more than its market value. It is fundamental that a plaintiff who does not rely upon his strict legal rights, but asks special relief from a court of equity, subjects himself to the equitable discretion of that court, and may be denied some measure of his legal rights, if to grant them all would be distinctly inequitable. Levy v. Kress, (C. C. A. 8) 285 Fed. 836, 839. We think this case is one for the application of this principle; and this for reasons which depend upon the peculiar facts of the case, and which we proceed to develop.

The surrender and reissue of the certificate did not occur under circumstances which made the act wrongful as against Mackenzie in the manner and degree to which such an act is ordinarily wrongful as against the true owner. On the contrary, while Mackenzie did not directly acquiesce in the withdrawal of the certificate, he contributed to create the situation attending the withdrawal, surrender, and reissue. To obtain a supersedeas would apparently have been no burden, and would have avoided all later complications, and, while it may be assumed that the lien upon the stock was in law reinstated ab initio when the judgment was reversed, yet the intermediate transfer and reissue

would not have occurred, if Mackenzie had taken the customary precautions to preserve his interests.

In any event, and even if Mackenzie had retained possession of the certificate, but lacking legal title thereto, Eschmann would have been entitled to surrender and require reissue thereof to his nominees, provided the security interest of Mackenzie was protected. In view of the pending litigation as to the existence of Mackenzie's interest, and the undisputed existence of substantial interest in Eschmann, it would seem that a court would have compelled the issue of a new certificate to Eschmann's nominees, if that certificate should have indorsed upon it a memorandum that it was subject to whatever lien Mackenzie might establish. The wrong done to Mackenzie was therefore the issuing of the new certificate in such a way that it might reach a bona fide purchaser and so perhaps cut off Mackenzie's lien, but the wrong did not extend to the entire value of the stock, since Mackenzie had therein no interest to be injured except to the extent of his lien.

In this situation the parties came to the foreclosure sale of the stock. Its value was $17,000; the lien was about $10,000. It was quite evident that no sale could be had at which any fair value could be realized. No counsel would undertake to advise with certainty what title would pass. The books of the corporation showed no interest to sell. No stranger would pay a substantial price, because he would be buying only a lawsuit. Eschmann and his vendees would not bid, because they were advised, and doubtless in good faith believed, that no title would pass. The actual result was inevitable, viz. that Mackenzie would buy in the $17,000 of stock for a nominal price (he paid $100), and still leave his whole claim against Eschmann for the debt practically unimpaired. This would be and was a grossly inequitable result. The situation could have been easily clarified, and it was Mackenzie's duty to procure that clarification before going to sale, if he expected to seek the aid of a court of equity in enforcing his rights as purchaser. An appropriate proceeding could have been taken in the equity court, where the case was pending, and probably as ancillary or supplemental to that case, whereby it would have been adjudicated, as between Mackenzie, the corporation, Eschmann, and the purchasers pendente lite, just what title would pass by the expected sale. After such an adjudication the sale would have been fair to all concerned, and all suitable equitable enforcement remedies could have been asked without embarrassment.

In the strongest light in which the situation could be stated for plaintiff, it would be as if the reissued certificates had borne, in words, the qualification that they were subject to Mackenzie's interest, and by assuming that, even then, a foreclosure sale would absolutely cut off the title, not only of the parties, but of all who had purchased since the suit was commenced, and hence that there could have been no equitable obligation to clear up the title before proceeding to sale. However, such a statement does not meet the full facts. In no such ordinary foreclosure would it appear that steps had been taken, pursuant to the decree against plaintiff and while unreversed, and under which new parties had become entitled to be heard as to whether their title was

cut off—in other words, as to whether they were purchasers pendente lite within the meaning of that phrase in the rule which puts such purchasers in the position of their vendors.

The rule which shapes the relief given by a court of equity in circumstances where equitable considerations make that relief contingent upon plaintiff's acceptance of less than full legal rights, must vary in its application with every case. We have not found any application precisely similar to that which we now make, but we think it is required by the inevitable effect of similar rules.

We therefore conclude that, as against the corporation, which in some measure represents its stockholders of record, and for the purposes of the decree which the court below, sitting in equity, ought to have rendered, it must be considered that, at the time of plaintiff's demand upon the corporation for a transfer of stock, he had only a lien for his debt and interest, so that his measure of damages against the corporation in this equitable proceeding should be limited to the amount necessary to discharge such lien. The lien would, we think, include the costs of the state court proceedings up to the time of the decree of the trial court directing a sale, but not thereafter.

Defendant has interposed no claim that a court of equity was without jurisdiction because the remedy at law was adequate; and there is, to say the least, no such clear lack of jurisdiction that the court should raise that question. The fact that the relief given turns out to be a money judgment only, does not necessarily control; nor yet the fact that, though plaintiff appealed to a court of equity to get more than strict legal rights, he gets less than they would have been if, as we have assumed merely for the purposes of this opinion, the full legal title passed by the sale.

[2] It is urged that, even though there was a wrong done to plaintiff by the transfer and reissue of the stock without saving his lien, yet that no damage has resulted to him, because the lien still exists, as against purchasers with knowledge, and that it is plaintiff's duty to pursue the purchasers, bring them into court, and enforce his lien, unless they can prevail against him. As an original proposition, this would be forceful; but, to the majority of the court, the contrary seems to be settled. Whether the corporation is held as for a conversion, or on the ground of negligence as a trustee, it is liable to the rightful owner in damages, and he is not obliged to pursue the purchaser. Telegraph Co. v. Davenport. 97 U. S. 369, 371, 24 L.Ed. 1047; St. Romes v. Cotton Press Co., 127 U. S. 614, 620, 8 Sup. Ct. 1335, 32 L. Ed. 289.

The decree must be set aside, and the case remanded, for the entry of a new decree in accordance with this opinion, with costs to the company.