## MACKENZIE *v.* A. ENGELHARD & SONS COMPANY.

## A. ENGELHARD & SONS COMPANY *v.* MACKENZIE.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SIXTH CIRCUIT.

Nos. 55 and 59. Argued October 9, 1924.—Decided November 17, 1924.

1. An appeal is a proceeding in the original cause and the suit is pending until the appeal is disposed of. P. 142.
2. Where the owner of corporate shares, the unendorsed certificate for which was held by another as collateral to a note, at first prevailed in a suit brought by the latter in a Kentucky court to enforce the note and the lien, and, under permission of the judgment, withdrew the stock certificate, filed as an exhibit, and procured the shares to be transferred by the corporation to others, *held:*
(a) That a final judgment, entered after a reversal, sustaining the plaintiff's claim, ordering that the shares be publicly sold, and confirming a sale so made to the plaintiff, was binding, with respect to his ownership so acquired, upon the assignees of the shares, who so took them pending the appeal, although the plaintiff had obtained no supersedeas of the original judgment, and, owing to the tactics pursued by his opponents, had bought them in at far less than their true value. P. 143.

(*b*) That Kentucky Civ. Code § 747, providing that " an appeal shall not stay proceedings on the judgment unless a supersedeas be issued," was inapplicable. P. 143.

(*c*) That the plaintiff's rights, under the state judgment, to have the shares with accrued dividends or their value was absolute as against the corporation, (which allowed the transfer with notice of the suit,) and were not diminished in equity by his failure to procure the supersedeas, or to pursue the assignees of the stock, (since he was not bound to do either,) nor by the low price he paid for the shares. *Id.*

286 Fed. 813, reversed.

CERTIORARI, on petitions of both sides, to review a decree of the Circuit Court of Appeals which modified a decree for the plaintiff, Mackenzie, in his suit to compel the defendant corporation to deliver to him a certificate for shares of its stock, or to pay him their value, and for an accounting of all dividends declared since his purchase of the shares at a judicial sale.

*Mr. William Marshall Bullitt,* with whom *Mr. Samuel B. King* was on the brief, for Mackenzie.

Mackenzie became the full legal owner of the 130 shares of stock, as purchaser at a valid judicial sale, duly confirmed by the state court.

The court could adjudge a lien on the shares of stock without retaining the physical custody of the certificate itself, which it had erroneously surrendered to Eschmann under the original judgment. When that judgment was reversed, and Eschmann's executors were decreed to return the certificate to the court, their failure could not affect the power of the court to adjudge a lien upon the stock to secure the payment of the note on which it was pledged. *Sprague* v. *Cocheco Mfg. Co.,* Fed. Cas. No. 13,249.

The stock stands in the name of the original transferees and no rights of *bona fide* purchasers for value, without notice, have arisen.

Neither the judgment, order of sale, nor order of confirmation, was ever appealed from, and they cannot be collaterally attacked here.

Whether (a) a lien could be created by pledging a certificate of stock without endorsing it in blank, or (b) the compulsory surrender of the possession of the pledged thing under order of court destroys the lien, or (c) a court's commissioner must have physical possession of the thing sold at the time of the sale, or (d) corporate stock could be sold and a bill of sale made therefor without having the mere evidence thereof in the shape of the stock certificate present—were all matters which, whether decided rightly or wrongly, could only affect the correctness of the judgment and not its validity.

Any rights acquired by Eschmann, or by his wife or attorney through him, under the lower state court original decree, were subject to be divested by a reversal.

The Engelhard Company's act in transferring the stock pending the appeal was voluntary,—not done under or pursuant to the judgment.

Putting to one side cases of purchasers under judicial sales (where for reasons of public policy judicial sales are protected even in the event of reversal, 96 Am. St. Rep. 136, note), the law is well settled that even if a *bona fide* purchase, for value, is made after an appeal is taken, the purchaser's title remains subject to the final decision of the appellate court; and hence his title is lost if that results in a reversal. *Kirkland* v. *Trott,* 75 Ala. 321; *Real Estate Sav. Co.* v. *Collonious,* 63 Mo. 290; *Carr* v. *Cates,* 96 Mo. 271; *Dunnington* v. *Elston,* 101 Ind. 373; *Debell* v. *Foxworthy,* 9 B. Mon. 228; *Clark* v. *Farrow,* 10 B. Mon. 446; *Clarey* v. *Marshall,* 4 Dana, 95; *Martin* v. *Kennedy,* 83 Ky. 335; *Cook* v. *French,* 96 Mich. 525; *Lord* v. *Hawkins,* 39 Minn. 73; *Smith* v. *Burns,* 72 Miss. 966; *Harle* v. *Langdon,* 60 Tex. 555.

An appeal is a mere continuation of the original suit, so that the *lis pendens* established by the suit continues until the expiration of the time for appeal; or, in the event of appeal, until the final disposition of the case by the appellate court. *Golden* v. *Riverside Coal Co.*, 184 Ky. 200; *Webb* v. *Webb's Guardian*, 178 Ky. 152. *Fidelity Trust Co.* v. *Louisville Banking Co.*, 119 Ky. 675; *Langley* v. *Warner*, 3 N. Y. 327; *Bank of United States* v. *Bank of Washington*, 6 Pet. 19; and *Fidelity Mutual Life Ins. Co.* v. *Clark*, 203 U. S. 64, distinguished.

The basis of the decision in the *Fidelity Trust Co. Case* was the difference between money and property, as is shown by *Webb* v. *Webb's Guardian, supra,* and *Golden* v. *Riverside Coal Co., supra.* See also, *Phelps* v. *Elliott,* 35 Fed. 455.

A creditor receiving payment out of money lawfully in the plaintiff's hands, occupies a very different position from a corporation which chooses to transfer corporate stock upon its books at the request of an ostensible owner, with full knowledge that another person is claiming title thereto.

Having procured the ruling dismissing it as a party, the Engelhard Company is now estopped from claiming that it should have been a party to the suit or that Mackenzie should have pursued some other course. *Doniphan* v. *Gill,* 1 B. Mon. 199; *Taylor* v. *Cook,* 136 Ala. 354; *Kelly* v. *Norwich Co.,* 82 Ia. 137.

Mackenzie, having acquired title to the stock, was entitled to demand a transfer thereof on the company's books, and when it refused he could maintain an action, in equity, to compel a transfer of the stock to him and an accounting for dividends paid since he became the owner. *St. Romes* v. *Cotton Press Co.,* 127 U. S. 614; 14 Corpus Juris, 757, § 1158; *Cushman* v. *Thayer Mfg. Co.,* 76 N. Y. 365; *Mundt* v. *Commercial Natl. Bank,* 136 Am. St. Rep. 1023, and monographic note, pp. 1030,

1035, 1039; *Citizens Natl. Bank* v. *State,* 45 L. R. A. (N. S.) 1075, and elaborate note, pp. 1080–1082. See also *Leurey* v. *Bank,* Ann. Cas. 1913 E, pp. 1174–1176, note and cases there cited; 4 Pomeroy's Eq. Jur., 3d ed., § 1412, note.

The law in Kentucky is to the same effect. *Bank of Kentucky* v. *Winn,* 110 Ky. 140; see also *Ramage* v. *Gould,* 176 Cal. 746.

To a suit of that kind, the corporation is the only necessary party; and third persons claiming to hold certificates for the same stock are not necessary parties. *St. Romes* v. *Cotton Press Co.,* 127 U. S. 614; *Skinner* v. *Fort Wayne R. Co.,* 58 Fed. 55.

When a corporation knows that there are rival claimants to a certificate of stock, which controversy is in litigation, it acts at its peril in deciding between them; and if the corporation " guesses wrong " as to which will ultimately have the better title, it is responsible to the rightful owner. 1 Machen's Modern Law of Corporations, § 935; *Miller* v. *Doran,* 245 Ill. 200.

The company could have protected itself—either by interpleader or refusal to transfer the stock until the appeal was decided, or by demanding a bond of indemnity. See note to *O'Neil* v. *Wolcott Mining Co.,* 174 Fed. 527; 27 L. R. A. (N. S.) 200, 201; *Mundt* v. *Commercial Natl. Bank, supra,* p. 1030, note 1; 7 R. C. L. 268.

If a corporation issue new certificates to one not the true owner thereof, the owner can maintain a suit in equity against the corporation to compel the issuance of new certificates to him, or, in the alternative, to recover the value of his stock. *Black* v. *Zacharie & Co.,* 3 How. 483; *Telegraph Co.* v. *Davenport,* 97 U. S. 369; *Moores* v. *Citizens' Natl. Bank,* 111 U. S. 156; *St. Romes* v. *Cotton Press Co.,* 127 U. S. 614.

The Circuit Court of Appeals erred in limiting Mackenzie's recovery to his original $7,500 debt and interest.

It, in effect, denied the full faith and credit to the state court judgment, which by statute it is required to accord. Rev. Stats., § 905; *Cooper* v. *Newell*, 173 U. S. 555; *Yazoo & Mississippi Valley R. R. Co.* v. *Clarksdale*, 257 U. S. 10.

A federal court, in equity, is not entitled to decide a case according to its individual ideas of what the result should be, but it is bound by the fixed principles of jurisprudence, one of which is that it must give to the judgment of a state court, having personal jurisdiction of the parties, the same effect as to the rights arising therefrom, as would be accorded by the judgment in the State where rendered. *Cooper* v. *Newell*, 173 U. S. 555.

The Circuit Court of Appeals misconceived the nature of the equitable principle invoked by it to justify its disregard of Mackenzie's legal title to the stock and its award of damages measured by a lien that had ceased to exist. *Magniac* v. *Thomson*, 15 How. 281; *Betzler* v. *James*, 227 Mo. 375. See also *Old Colony Trust Co.* v. *Medfield Street Ry. Co.*, 215 Mass. 156; *York* v. *Trigg*, 87 Okla. 214; *Osborn* v. *United States Bank*, 9 Wheat. 738.

*Mr. J. Verser Conner*, with whom *Mr. Percy N. Booth* was on the brief, for A. Engelhard & Sons Company.

The first judgment decreed that Mackenzie had no cause of action against Eschmann and no lien on the stock, and directed that the certificate be delivered to Eschmann. More than two months thereafter, Eschmann withdrew the certificate from court, and more than three and one-half months thereafter presented the certificate to the corporation and demanded its transfer. Is the corporation liable for making such transfer? If it is, its liability is, of course, wholly dependent upon its knowledge of the litigation between Mackenzie and Eschmann.

Section 747 of the Civil Code of Kentucky: "An appeal shall not stay proceedings on the judgment unless a supersedeas be issued."

The transferees who took while the first judgment was in effect, took a good title. *Fidelity Trust Co.* v. *Louisville Banking Co.,* 119 Ky. 675; *Bank of United States* v. *Bank of Washington,* 6 Pet. 19.

Admitting that the transferees knew of the litigation, the fact is that they took title at a time when the title of Eschmann to the stock was free from encumbrance by virtue of the judgment of the Jefferson Circuit Court. The notice, therefore, that Mackenzie might appeal and get that judgment reversed could not be made to take the place of a supersedeas bond. When the case was reversed and the new judgment entered, Mackenzie acquired a perfectly valid right as against Eschmann, but no right as against Eschmann's transferees.

A more recent decision of this Court illustrates the same principle. *Fidelity Mutual Life Ins. Co.* v. *Clarke,* 203 U. S. 64; *Langley* v. *Warner,* 3 N. Y. 327; *Wood's Administrator* v. *Nelson's Administrator,* 9 B. Mon. 600.

"Whatever is lawfully done under the judgment before the supersedeas takes effect is valid and must stand." 37 Cyc. 602; 2 R. C. L., pp. 273, 291.

Consequently Mackenzie was bound by the judgment of the court permitting Eschmann to withdraw the stock and his alleged lien was lost thereby. His only chance to save it was to supersede that judgment. *Hey* v. *Harding,* 25 Ky. L. Rep. 1454; *Garrett* v. *Jensen,* 44 Cal. App. 99. See *Maxwell* v. *Bank of New Richmond,* 101 Wis. 286; *Stephens* v. *Willis,* 21 Ky. L. Rep. 170. *Clarey* v. *Marshall,* 4 Dana, 95; *Golden* v. *Riverside Coal Co.,* 184 Ky. 200; *Webb* v. *Webb's Guardian,* 178 Ky. 152; *Miller* v. *Doran,* 245 Ill. 200, distinguished. Cf. *Ure* v. *Ure,* 223 Ill. 454; *Chicago & N. W. Ry. Co.* v. *Garrett,* 239 Ill. 297.

The corporation which was not a party to the litigation in the lower court cannot be held liable for a tort in doing an act which, when done, was justified by a subsisting judgment. *Bridges* v. *McAlister,* 106 Ky. 791.

One who acts in a manner justified by a subsisting and unsuperseded judgment is protected, even though the act is not done by compulsion of the judgment. *Porter* v. *Small,* 62 Oreg. 574; *Hall* v. *Smith-McKenney Co.,* 162 Ky. 159; *Stephens* v. *Willis,* 21 Ky. L. Rep. 170.

An interpleader proceeding by the corporation would have been useless, as the respective rights of Mackenzie and Eschmann to the stock were *res judicata* when the corporation transferred it. *Deposit Bank* v. *Frankfort,* 191 U. S. 499.

Eschmann had the right to demand that his stock be transferred even though Mackenzie had a lien thereon. *First Natl. Bank* v. *Bowman,* 168 Ky. 433; *National City Bank* v. *Wagner,* 216 Fed. 473.

Had the corporation refused to transfer upon Eschmann's demand, it would have rendered itself liable in damages. The possibility of an appeal from the judgment did not justify refusal of the corporation to act in accordance with the judgment. *American Natl. Bank* v. *Douglas,* 126 Ark. 7.

A corporation is not liable for registering a voidable transfer. *Casey* v. *Kastell,* 237 N. Y. 305.

The corporation cannot inquire into the validity, as between the parties, of a transfer of its stock. Having lawfully transferred the stock in 1915, it was not liable for refusal to reissue it in 1919. 6 Fletcher's Cyc. of Corporations, p. 6412; Machen, Corporations, § 934.

Even if the transfer was wrongful, no liability attaches, because (*a*) no loss is shown to have been suffered by Mackenzie, and (*b*) the transfer on the books was not essential to the transfer of title, and such transfer on the

books was not the proximate cause of any loss suffered by Mackenzie. *Smith* v. *Railroad,* 91 Tenn. 221.

The Circuit Court of Appeals erred in deciding that it was bound by the decisions of this Court to hold the transfer on the corporate books to be the proximate cause of loss to Mackenzie. Eschmann, being the owner, had a right to demand and enforce the transfer of his stock on February 20, 1915, in spite of any lien of Mackenzie's. *Telegraph Co.* v. *Davenport,* 97 U. S. 369; *St. Romes* v. *Cotton Press Co.,* 127 U. S. 614, distinguished.

The distinction between the liability of a corporation for making a transfer without authority from the true owner, and its liability for making such transfer pursuant to the direction of the true owner but in violation of some equitable rights of third persons, was aptly pointed out by Judge Lurton. *Smith* v. *Railroad,* 91 Tenn. 221.

As for the refusal of the corporation to transfer the stock to Mackenzie after his alleged purchase at the judicial sale, obviously, if the corporation acted lawfully when it transferred the stock to Eschmann's assignees, it could not be liable for refusing to do an impossible thing, that is, to issue the stock to Mackenzie four years thereafter. Engelhard Company was not a party to the litigation when the judgment relied on was entered and had not been for something like six years. The judgment, therefore, cannot bind the company as *res judicata.* *McCallister* v. *Bridges,* 19 Ky. L. Rep. 107; *Everidge* v. *Martin,* 164 Ky. 497.

Mackenzie's title to the stock as purchaser has not been adjudged. He took only the title which Eschmann had, and that was no title. *Beale* v. *Stroud,* 191 Ky. 755.

By voluntarily relinquishing possession of the certificate through his failure to supersede the judgment, Mackenzie lost his lien.

The attempted sale of the chattel not in the court's possession, (the corporation not being a party) was ineffective to convey title.

The order of sale and bill of sale did not describe the thing sold sufficiently to effect a valid sale.

A court of equity will not enforce rights claimed under a judgment unless it be shown that the enforcement of such rights would produce equity. 23 Cyc. p. 1432; *Lawrence Mfg. Co.* v. *Janesville Cotton Mills,* 138 U. S. 552; *Gay* v. *Parpart,* 106 U. S. 679; *Wadhams* v. *Gay,* 73 Ill. 415.

This is the rule recognized, but we submit misapplied, by the Circuit Court of Appeals in the case at bar. If Mackenzie could show, first, that he had been deprived of the means of collecting his original debt, and second, that he had been so deprived by the action of the corporation, and third, that the corporation was not justified in making the transfer in reliance on the judgment, there might be some ground to contend that a court of equity should lend him its aid. In this case, he wants to punish the corporation which acted in good faith and in reliance on the judgment of the court; and he wants to gain for himself a net profit of more than $30,000, though there is no equity in his claim.

A federal court should decline to exercise its equitable powers to enforce an inequitable claim based upon a state court judgment. *Hassall* v. *Wilcox,* 130 U. S. 493; *Gay* v. *Parpart, supra.*

The case should be remanded to the District Court with directions to dismiss the petition.

MR. JUSTICE HOLMES delivered the opinion of the Court.

This is a bill brought by Mackenzie to compel the defendant corporation, A. Engelhard & Sons Company, to deliver to the plaintiff one hundred and thirty shares of

stock formerly represented by certificate numbered 24, to the defendant, or to pay to him the value of the same, and the amount of all dividends declared upon the shares since July 15, 1918.   The grounds are these.

The plaintiff, being holder of a note for $7,500 and of the above mentioned certificate then standing in the name of F. W. R. Eschmann and unendorsed but stated in the note to be security, brought a suit against Eschmann, and others, makers of the note, and the corporation, in the Jefferson Circuit Court of Kentucky, to recover upon the note, to have it declared a lien upon the said stock and to have the lien enforced.   He filed the certificate as an exhibit.   The corporation was dismissed from the suit upon its demurrer, but of course had notice thereafter that the suit was pending and that the plaintiff claimed an interest in the stock.   Indeed, the plaintiff had previously sought to have the certificate that he held transferred to him as pledgee but had been refused. On November 7, 1914, judgment was rendered for the defendants and it was further adjudged that the defendant F. W. R. Eschmann be " permitted " to withdraw the certificate from the exhibits, leaving a copy in the record. The plaintiff prayed an appeal but did not obtain a supersedeas, as he might have by giving a bond.

Eschmann withdrew the certificate and on February 20, 1915, obtained in place of it new certificates to his wife and his attorney.   On April 26, 1915, the plaintiff perfected his appeal to the Court of Appeals of Kentucky. On March 6, 1917, the Court of Appeals reversed the judgment below, 174 Ky. 450; and on October 31, 1917, final judgment was entered in the Jefferson Circuit Court that the plaintiff should recover the sum demanded and that he had a lien upon certificate No. 24, and the shares represented by it and upon any certificates that might have been issued by the corporation to the defendants,

then the executors of F. W. R. Eschmann, deceased, in lieu of No. 24, to secure the plaintiff in the payment of the debt and costs. It was adjudged further that the shares should be sold and that the defendants should return the certificate to the Court. On July 15, 1918, a sale was had, but the attorney for the defendants, who also is attorney for the corporation, attended and gave notice that the certificate had been sold by Eschmann and had been canceled. The plaintiff bought for one hundred dollars and on October 30, 1918, the sale was confirmed by the Court. Subsequently he demanded a certificate from the corporation but was refused. All its stock had been issued.

In the present case the District Court decreed that the plaintiff recover his original debt and interest, with a dividend declared after the purchase by the plaintiff, in all $13,354.75, with interest from the date of the decree until paid. Both parties appealed to the Circuit Court of Appeals. That Court, while agreeing that the plaintiff was entitled to relief against the corporation, held that as the plaintiff had not obtained a supersedeas to the first judgment in the former suit and had taken no proceedings before the sale to establish what title would pass by it, his relief in equity should be limited to the amount of the debt, interest and costs in the other suit up to the time of sale, although the plaintiff's right was absolute at law. 286 Fed. 813. Writs of certiorari were issued on the petitions of both sides. [262 U. S. 739.]

It does not seem to us to need argument to establish that the sale to the plaintiff was effectual as against the parties to the suit. The decree confirming the sale was final and not appealed from. We believe the rule in Kentucky to be that purchasers *pendente lite* would stand in the defendant's shoes. An appeal is a proceeding in the original cause and the suit is pending until the

appeal is disposed of. Therefore, apart from more special considerations applicable here but not needing mention, the assignees of the stock stood no better than Eschmann unless they were helped by the provision that "an appeal shall not stay proceedings on the judgment unless a supersedeas be issued" in the Kentucky Civil Code. § 747. But there was no question here of any proceedings on the judgment. When the final judgment was reached it determined the rights of Eschmann *ab initio,* and it seems to us impossible to believe that it did not also determine the rights of the assignees. We understand that this would be the view of the Kentucky Court of Appeals. *Golden* v. *Riverside Coal & Timber Co.,* 184 Ky. 200, 205.

The liability of the corporation rightly was found to exist by both Courts below. The company might be liable even without fault, and if for any reason it were unable to restore the stock it might be answerable for its value. *Telegraph Co.* v. *Davenport,* 97 U. S. 369, 372. *Moores* v. *Citizens' National Bank,* 111 U. S. 156, 166. But here, as we have said, it had notice of the suit. It knew that the first judgment might be reversed, as it was, upon appeal, and was entitled to protect itself, as it might have and for all that appears may have done, when it issued the new certificates. We perceive no reason in the Kentucky Civil Code for distinguishing between its position and that of the assignees.

We come then to the question whether equity requires any diminution of the rights acquired by the plaintiff under the judicial sale to him. It is adjudged that his rights are absolute. It is a strong thing to cut down his rights under the judgment of the State Court. The parties stood upon equal ground. Without going further into the facts each seems to have been trying to get the better of the other and neither can get much help from atmospheric considerations. The plaintiff did not care

to assume the liabilities of a supersedeas bond, but if the defendant took no steps to protect itself it might have done so. The plaintiff was not bound to pursue the assignees of the stock before looking to the corporation. *St. Romes* v. *Levee Steam Cotton Press Co.*, 127 U. S. 614, 620. It is immaterial what were the limits of the plaintiff's original interest; he comes before this Court as absolutely entitled to the stock and the preliminaries to his acquiring the title have no bearing on the case. He got it at a better bargain than he would have done had his adversaries taken a different course, but he got it and his right is not to be impugned. See *Miller* v. *Doran*, 245 Ill. 200.

*Decree reversed.*

MR. JUSTICE MCREYNOLDS, MR. JUSTICE SUTHERLAND and MR. JUSTICE SANFORD dissent.