173 So. 527

**OTWELL et al. v. VAUGHAN et ux.**

No. 33702.

Feb. 12, 1937.

Rehearing Denied March 29, 1937.

Jackson & Smith and Charles L. Mayer, all of Shreveport, for appellants.

W. M. Phillips, Smitherman & Smitherman, and Herold, Cousin & Herold, all of Shreveport, for appellees.

O'NIELL, Chief Justice.

This case presents a new problem. The appellees, who were the plaintiffs, and for whom the judgment was rendered, are asking for a reversal of the judgment and for the dismissal of their suit; and the appellants, who were the defendants in the case, are asking for a dismissal of their appeal, or, in the alternative, for an affirmance of the judgment which they appealed from. This predicament is the result of an error of law, and a misunderstanding of the facts, on the part of the attorney who filed the suit for Harry Otwell. He sued for a partition, by licitation, of a tract of land of which he was the sole and exclusive owner. He brought the suit against H. O. Vaughan and his wife, under the erroneous belief that they, or Mrs. Vaughan, owned a half interest in the land; and he made Omer J. Rowe and Fred H. Ryan and W. C. Woolf coplaintiffs in the suit, under the erroneous belief that they owned half of the mineral rights in the land, when, as a matter of fact, and as disclosed by the allegations of the petition, no one except Harry Otwell had any right or interest whatever in the

property which he asked to have partitioned by licitation.

The only errors made in the petition were in the conclusions with regard to the ownership of the property sought to be partitioned. The facts were stated accurately in the petition, and are supported by the deeds introduced in evidence, and in fact are not disputed. On the 21st day of July, 1923, the Rodessa Oil & Land Company sold to the defendants in this suit, H. O. Vaughan and his wife, Gertrude Trow Vaughan, the tract of land which is here involved, having an area of 16 acres, and being all of that part of the S. E. ¼ of S. E. ¼ of Sec. 15, in T. 23 N., R. 16 W., that is on the west side of the public highway, called the model road, in the parish of Caddo. The sale was made to and in the name of both the husband and wife, thus: "Unto H. O. Vaughan, a married man, and his wife, Gertrude Trow Vaughan." The deed was signed by both, H. O. Vaughan and Gertrude Trow Vaughan. The sale was made for $800, on terms of credit, thus: $1 was said to be paid in cash, $199 was payable in a year and 4 months, $300 in 2 years and 4 months, and $300 in 3 years and 4 months. On the 1st day of May, 1925, Vaughan, having failed to pay for the land, and being yet married to Mrs. Gertrude Trow Vaughan, retroceded the land to the Rodessa Oil & Land Company for the unpaid price; that is to say, for $1 cash and the cancellation of the three promissory notes, amounting to $799, and representing the price for which the Vaughans had bought the land. The instrument, retroceding the land to the Rodessa Oil & Land Company, was not signed by Mrs. Vaughan, but only by H. O. Vaughan. He identified himself, in the deed, as the husband of Gertrude Trow Vaughan, and identified the land as being "better known as the tract that the Rodessa Oil & Land Company sold to H. O. Vaughan and his wife, Gertrude Trow Vaughan, on July 21, 1923."

Our reason for mentioning that Mrs. Vaughan did not sign the retrocession of the land to the Rodessa Oil & Land Company is that article 2334 of the Civil Code, as amended by Act No. 170 of 1912 and Act No. 186 of 1920, declares that when the title to community property stands in the name of the wife, it cannot be mortgaged or sold by the husband without her written authority or consent. It was decided, however, in the case of Young v. Arkansas-Louisiana Gas Co., 184 La. 460, 166 So. 139, in March, 1936, that article 2334 of the Civil Code, as amended, did not require that a man should have the written authority or consent of his wife to sell community property that was bought in the name of both the husband and wife, because in such a case it was obvious that the property really belonged to the matrimonial community. Under the doctrine of that decision, which was rendered four months after the present case was appealed to this court, the retrocession of the 16 acres of land to the Rodessa Oil & Land Company by H. O. Vaughan, without the written authority or consent of his wife, reinvested a complete and valid title in the Rodessa Oil & Land Company.

On the 7th day of January, 1929, the Rodessa Oil & Land Company sold to Harry Otwell a tract of land having an

area of 60 acres, including the 16 acres which had been sold to the Vaughans and resold by Vaughan to the Rodessa Oil & Land Company. The tract which was sold to Otwell is all of the S. E. ¼ of S. E. ¼ of Sec. 15 and the W. ½ of the S. W. ¼ of S. W. ¼ of Sec. 14, in T. 23 N., R. 16 W. The 20 acres forming the W. ½ of S. W. ¼ of S. W. ¼ of Sec. 14 was described erroneously, as S. W. ½ of S. W. ¼ of S. W. ¼ of Sec. 14, but the description was corrected by a deed dated March 4, 1933. On the 28th day of February, 1934, Otwell sold to Omer J. Rowe half of the mineral rights in the 44 acres of land on the east side of the public highway, or model road, and consisting of the eastern 24 acres in the S. E. ¼ of S. E. ¼ of Sec. 15 and the 20 acres forming the W. ½ of S. W. ¼ of S. W. ¼ of Sec. 14. The 44 acres, therefore, comprised all of the 60 acres which Otwell had bought from the Rodessa Oil & Land Company except the 16 acres which the Vaughans had owned, on the west side of the model road. On the 1st day of March, 1934, Rowe sold to Fred H. Ryan three-eighths of the mineral rights in the 44 acres of land, and retained one-eighth; and, on the 11th day of April, 1934, Ryan sold to W. C. Woolf three-sixteenths of the mineral rights in the 44 acres, and retained three-sixteenths. Therefore, when this suit was filed, Harry Otwell owned outright the 16 acres of land which the Vaughans had owned, on the west side of the model road, and Otwell owned all of the mineral rights in the 16 acres; and he owned also the 44 acres, which the Vaughans had never owned, on the east side of the model road, and Otwell owned half of the mineral rights in the 44 acres. Omer J. Rowe then owned one-eighth of the mineral rights in the 44 acres, and Fred H. Ryan owned three-sixteenths and W. C. Woolf three-sixteenths of the mineral rights in the 44 acres, in which the Vaughans had never had any interest whatever.

The attorney who brought this suit against H. O. Vaughan and his wife, for a partition, by licitation, of the 16 acres of land which the Vaughans once owned, was of the opinion that they, or Mrs. Vaughan, yet owned half of the 16 acres of land, for the reason that Vaughan did not have the written authority or consent of Mrs. Vaughan to retrocede the land to the Rodessa Oil & Land Company for the unpaid price. The reason for the error in that respect was that the case of Young v. Arkansas-Louisiana Gas Company had not been decided, and the court had never had an occasion to decide whether article 2334 of the Civil Code, as amended by Act No. 170 of 1912 and Act No. 186 of 1920, required the consent of the wife for the husband to sell community property which was bought in the name of both the husband and wife.

It appears also that the attorney who brought this partition suit believed that the 44 acres of land in which Omer J. Rowe and Fred H. Ryan and W. C. Woolf, together, owned half of the mineral rights, included the 16-acre tract which was to be partitioned, and which the Vaughans once owned, on the west side of the model road. Hence Rowe and Ryan and Woolf were named as plaintiffs in this suit to partition

the 16 acres of land, although, according to the facts alleged in the petition, and shown by the deeds which were introduced in evidence, Rowe and Ryan and Woolf had no interest whatever in the 16 acres of land which had belonged formerly to the Vaughans, and which belonged exclusively to the plaintiff Harry Otwell at the time when this suit was filed. Although it was alleged, in a general way and as a mere conclusion, that the 16 acres of land belonged one-half to the plaintiffs Otwell, Rowe, Ryan, and Woolf, and one-half to the Vaughans, the facts which were stated specifically in the petition showed that no one but Otwell had any right or interest whatever in the 16 acres of land. This 16-acre tract is described accurately in the petition, and in the deeds to and from the Vaughans as being that part of the S. E. ¼ of S. E. ¼ of Sec. 15 on the west side of the model road, and as having a length of 440 yards, or 20 chains, on its west boundary line, measured from the southwest corner to the northwest corner of the S. E. ¼ of S. E. ¼ of Sec. 15, and having a width of 76 yards, or 3.45 chains, on its north boundary line, measured from the northwest corner of the S. E. ¼ of S. E. ¼ of the section, eastward, to the model road, and having a width of 276 yards, or 12.55 chains, on its south boundary line, measured from the southwest corner of the S. E. ¼ of S. E. ¼ of the section, eastward, to the model road. The tract therefore has a mesne width of 8 chains, and the length of 20 chains, and hence the area of 16 acres, exactly as stated in the deeds. The remaining 24 acres in the S. E. ¼ of S. E. ¼ of Sec. 15 and the 20 acres forming the W. ½ of S. W. ¼ of S. W. ¼ of Sec. 14 are the 44 acres in which Omer J. Rowe and Fred H. Ryan and W. C. Woolf acquired half of the mineral rights. This 44-acre tract does not embrace the 16-acre tract which the Vaughans once owned, but is separated from it by the model road.

It was alleged in the petition that, as the Vaughans were not residents of Louisiana, but residents of Texas, a curator ad hoc should be appointed to represent each one of them, and that, as they might have conflicting interests in the suit, one or the same curator should not represent both of them. Accordingly, two lawyers were appointed as curators, one for each defendant. It was alleged that the plaintiffs were not willing to continue to own the property jointly with the Vaughans, and that, as the property was not divisible in kind without diminution of its value, it should be sold at public auction, and the proceeds divided equally between the plaintiffs on the one side and the Vaughans on the other. It was alleged that Otwell, in good faith, believing that he was the sole owner of the 16-acre tract, had improved it, at a cost of $1,000, and had enhanced its value to that extent, and that he should be reimbursed therefor out of the proceeds of the sale of the property, and that the remainder only should be divided between the plaintiffs and the defendants.

The curators ad hoc, representing the Vaughans, respectively, filed separate answers, in which they denied separately each and every allegation in the petition. They even denied—and truthfully denied—the allegation that the Vaughans had a half in-

terest in the property, and denied—truthfully—the allegation that the retrocession of the property to the Rodessa Oil & Land Company by Vaughan without the written authority or consent of his wife had the effect of conveying only a half interest in the property, or of leaving a half interest in the Vaughans, or in Mrs. Vaughan. Each one of the curators, therefore, prayed that the plaintiffs' demand for a partition of the property should be rejected.

The judge of the district court, of course, had no reason to observe or imagine that Otwell or his attorney was mistaken in conceding that the Vaughans, or Mrs. Vaughan, had a half interest in the land which Otwell was seeking to have partitioned. The judge had no reason to observe or imagine that Otwell was mistaken also in conceding that the coplaintiffs, Rowe, Ryan, and Woolf, had a half interest in the mineral rights in the land. There was no reason for the judge to look beyond Otwell's judicial admission that he was not the exclusive owner of the property, or for the judge to observe or imagine that Otwell was seeking to provoke a division or partition of property which belonged to him alone. The judge, therefore, merely accepted the conclusions and admissions which were made by or for Otwell, against his interest, and gave judgment for the plaintiffs, according to the prayer of their petition, except that the judge allowed Otwell only $800, instead of $1,000, for having improved the property. The judgment "recognized" the plaintiffs to be the owners of a half interest, and "recognized" the defendants to be the owners of a half interest, in the 16 acres of land, and ordered

the sheriff to sell the land at public auction, and to pay Otwell $800 out of the proceeds of the sale, and to pay half of the remainder, if there should be a remainder, to the plaintiffs, and half to the defendants. A writ was issued to the sheriff to execute the judgment; and, accordingly, the property was offered for sale, and Otwell, being the last and highest bidder, bought the property for $800. The sheriff's return on the writ shows that out of the $800 he paid the court costs, amounting to $44, and applied the remainder, $756, to the payment of the judgment in favor of Otwell.

Eight months after the judgment was executed, the Vaughans appeared, represented by attorneys of their own selection, and asked for and obtained an order for a devolutive appeal from the judgment. That is the appeal which we are now considering. In their petition for the order of appeal the Vaughans, of course, made the stereotyped allegation that the judgment was contrary to the law and the evidence and that they were aggrieved thereby.

Soon after the case of Young v. Arkansas-Louisiana Gas Company was decided, and within the time allowed by the Code of Practice (articles 888–890) for an appellee "to complain of the judgment appealed from," the appellees filed in this court an answer to the appeal, in which answer the appellees admitted that the appellants were right in their allegation that the judgment appealed from was contrary to the law and the evidence, and should be reversed. Hence the appellees prayed that the judgment should be reversed and that the suit should be dismissed, for the reason, as

shown by the pleadings and the proof, that the plaintiff Harry Otwell was the exclusive owner of the property at the time when he sued for a partition, and that the suit was brought because of the false belief that the defendants had an interest in the property.

The appellants Vaughans promptly filed an opposition to the answer of the appellees, and a motion to reject the answer, on the ground, first, that the judgment appealed from was what the appellees had asked for, and, second, that they had acquiesced in the judgment by having it executed. Thereafter, the appellants Vaughans filed a motion to dismiss their appeal, on the ground that, in a certain suit pending in the district court in Caddo parish, entitled Gertrude Trow Vaughan et al. v. Haynes Production Company et al., No. 61,219 of the docket of the district court, in which suit the Vaughans were the plaintiffs and the present appellees were defendants, and. in which suit the same property was involved that is involved in this suit, they, the Vaughans, "filed a plea of res judicata, and thereby affirmed and acquiesced in the validity of the judgment appealed from herein." The Vaughans, in their motion to dismiss their appeal, averred also that the present appellees, in their answer to the suit No. 61,219 in the district court, had "affirmed the validity of the judgment rendered in this cause" and had thereby acquiesced in the judgment. Hence the Vaughans prayed that their appeal should be dismissed, and, in the alternative, if the appeal should not be dismissed now, that the case should be remanded to the district court with instruc-

tions to the clerk to send up to this court copies of the pleadings referred to, in the case No. 61,219 of the docket of the district court, to the end that the same might be made a part of this record, and that this appeal then should be dismissed. This court deferred action upon the appellees' answer to the appeal, and upon the appellants' motion to dismiss their appeal, and the whole matter was, by order of the court, argued and submitted with the merits of the case.

In their brief the appellants insist that their appeal should be dismissed, or else that the judgment appealed from should be affirmed. They cite article 567 of the Code of Practice, which provides that a party against whom a judgment has been rendered cannot appeal from it if he has confessed judgment, or if he has acquiesced in the judgment by executing it voluntarily. Hence it is argued that, as the plaintiffs, appellees, in this case, could not have appealed from the judgment, they could not, by answering the appeal and asking for a reversal of the judgment, prevent the appellants from dismissing their appeal. On the other hand, article 592 of the Code of Practice provides that an appellee may, without appealing, but by answering the appeal, have the judgment set aside in so far as he believes that he is aggrieved. Hence, article 594 provides that an appellant cannot withdraw his appeal after the citation of appeal has been served upon the appellee. All of which means that an appellee has the same right that an appellant has to have the appellate court render such judgment as the court of orginal jurisdiction should have render-

ed in the case. In fact, article 905 of the Code of Practice requires that the Supreme Court, if it sets aside the judgment of another court, shall render such judgment as the other court should have rendered. An appeal, in Louisiana, as in the federal equity practice, merely presents the whole case to the appellate court in order that the court shall pronounce the judgment which should have been pronounced originally. An appeal is defined in article 564 of the Code of Practice, thus:

"An appeal is the act by which one of the parties to a suit has recourse to a superior tribunal, in order to have the judgment of an inferior court corrected."

In Mackenzie v. A. Engelhard & Sons Co., 266 U.S. 131, 142, 143, 45 S.Ct. 68, 69, 69 L.Ed. 205, 209, 36 A.L.R. 416, it is said: "An appeal is a proceeding in the original cause and the suit is pending until the appeal is disposed of." And in Gulf Refining Co. v. United States, 269 U.S. 125, 137, 46 S.Ct. 52, 54, 70 L.Ed. 195, 199, originating in the United States District Court for the Western District of Louisiana, it is said: "An appeal is not a new suit in the appellate court, but a continuation of the suit in the court below, or, as this court has recently said, 'a proceeding in the original cause, and the suit is pending until the appeal is disposed of.'" (Citing Mackenzie v. A. Engelhard & Sons Co.)

In the case of Police Jury v. Succession of McDonogh, 8 La.Ann. 341, 362, in 1853, the defendant pleaded that the statute on which the plaintiff's suit was founded was unconstitutional; and, by consent of the parties, the judge rendered a judgment, pro forma, sustaining the plea, in order that the case might be appealed; and it was contended that the appeal should be dismissed because the plaintiff had consented to the rendering of the judgment, and because the Supreme Court would be exercising original jurisdiction if it should decide a case in which the judgment appealed from was consented to by the parties, and rendered only pro forma. But the court said:

"The defendant's plea presented a question of law purely; the case was submitted to the Court, and the agreement of the parties to have a pro forma judgment rendered, relieved the Judge from the necessity of doing more than to pronounce the judgment, and facilitate the parties in presenting the question involved for final decision in this Court. A party may appeal from a judgment rendered in his favor, and at his own instance, to correct any errors in it; a fortiori he may appeal from a judgment rendered against him to correct any errors, although he may have consented to that judgment, unless he has renounced the right of appeal.

"Suppose, for instance, that the plaintiffs really believed that the plea set up by the defendant was good in law, and consented to the judgment sustaining the plea, why should he not be allowed his appeal, if he subsequently thought the appeal [meaning plea] was bad. The judgment having been rendered with his consent does not make it less a judgment, nor can it be correctly said that this Court, under such circumstances, would render an original judgment when they decided on the appeal."

That decision was quoted with approval in Hewes v. Baxter, 45 La.Ann. 1049, 1056, 13 So. 817, 819, thus:

" 'A party may appeal from a judgment rendered in his favor, and at his own instance, to correct any errors in it.'

"As a matter of course, a mere declaration by either judge or jury, or by both, that a judgment is one in favor of a defendant, when in reality it is one against him, can have no effect as against the facts disclosed by the record."

These decisions are in accord with the provisions of article 902 of the Code of Practice, which, in substance, declares that, although, as a general rule, an appellate court will not consider pleas which were not made in the court of original jurisdiction, nevertheless the court may depart from this rule in order to consider an exception if it is one of the kind that may be pleaded at any stage of a lawsuit, and if the proof of it appears in the record. Accordingly, it has been decided that an appellate court may reverse a judgment and dismiss the suit if the petition of the plaintiff discloses, as a matter of law, that he had no right of action, even though the defendant did not file a formal exception to that effect. In Brown & Sons v. Saul et al., 4 Mart.(N.S.) 434, 437, 16 Am.Dec. 175, it was said:

"All dilatory and declinatory pleas ought to precede the contestatio litis; and even peremptory exceptions should be regularly pleaded; but a total want of legal right in a suitor, in relation to the matters in litigation, ought to be taken into consideration and acted on by courts of justice, at any stage of a cause. They should not remain silent spectators of infringements of the true principles of laws, which they are appointed to administer."

That decision was quoted with approval in State v. Winehill & Rosenthal, 147 La. 781, 786, 86 So. 181, 182, 186, where it was said:

"Under our system of having broad appeals upon the law and the facts, the question whether the plaintiff has a legal cause or right of action is presented in every case, whether pleaded specially or generally."

The appellants cite, as being in conflict with the decision in Police Jury v. Succession of McDonogh, and Hewes v. Baxter, an expression in State ex rel. John T. Moore Planting Co. v. Howell, Judge, 139 La. 336, 71 So. 529, to the effect that a party cannot appeal from a judgment rendered entirely in accordance with his own prayer. That statement was made merely as an abstract proposition, without reference to the previous decisions on the subject, and was not a part of the decision rendered in the case. The John T. Moore Planting Company sued the J. B. Levert Company to annul a sheriff's sale of the Moore Company's plantation to the Levert Company, in the foreclosure of a mortgage for more than $100,000. The defendant, Levert Company, answering the suit, denied that the sale was null, and prayed to have its validity confirmed, but, in the alternative, the defendant set up a reconventional demand, asking that the mortgage should be revived and again enforced, if the sale should be annulled. The plain-

tiff then moved to discontinue the suit to annul the sale, without prejudice to the defendant's reconventional demand. The judge overruled the motion to discontinue the suit, and rendered judgment annulling the sale and reviving the mortgage debt, for more than $100,000, and ordering that the plantation should be seized and sold again to satisfy the debt. The Moore Company sought to suspend execution of the judgment by appealing suspensively from the judge's refusal to allow the original suit to be discontinued, and from that part of the judgment which annulled the sheriff's sale; and the Moore Company claimed that the suspensive appeal bond should be for an amount only sufficient to secure the costs of court. The district judge granted a devolutive appeal on a bond for only $100, to cover the costs, but required a bond for one-half more than the amount of the judgment, for a suspensive appeal. On the Moore Company's application for a mandamus, this court ordered the district judge to allow the discontinuance of the suit to annul the sale, without prejudice to the defendant's reconventional demand, but rejected the relator's demand for a suspensive appeal from the judgment which was rendered in the case, on a bond for costs. It was in that connection that the court used the expression quoted by counsel for the appellants in this case. It was in that connection that the court said that, if the court should pretermit the question presented by the refusal of the judge to allow the plaintiff to discontinue the case without prejudice to the defendant's reconventional demand, "plaintiff was not entitled to the appeal as prayed for." That meant that the plaintiff was not entitled to suspend execution of the judgment for more than $100,000 by appealing "suspensively" from that part of the judgment which annulled the sale, on a bond for costs. The decision is not at all pertinent to this case.

The appellants cite the many decisions which maintain that a party against whom a judgment has been rendered has no right of action to annul the judgment on the ground merely that the case was decided wrong. Every case cited was a suit for an annulment of the judgment complained of, except the Succession of Williams, 168 La. 1, 121 So. 171, which was a suit to construe a consent judgment, which merely confirmed a written agreement of the parties, or, in the alternative, to reform the judgment so as to make it conform with the intention of the parties. None of the cases cited by the appellants in this case was on appeal from the judgment complained of.

Our conclusion is that the appellants are not entitled to have their appeal dismissed without the consent of the appellees.

There is no reason why the case should be remanded for the clerk of the district court to include in the record copies of the pleadings in the suit No. 61,219 of the docket of the district court, to show that the appellees in this suit, as well as the appellants, Vaughans, have "affirmed the validity of the judgment appealed from herein." To affirm or acknowledge the validity of the judgment is not the same as to acknowledge that the judgment is the one that should have been rendered. Even

though the Vaughans may have affirmed and acquiesced in the judgment itself, as being a correct judgment, their acquiescence would add nothing to their desire now to have their appeal dismissed. It is not claimed by the appellants that the appellees have ever acknowledged that the judgment appealed from was correct since the case of Young v. Arkansas-Louisiana Gas Company was decided.

■ The alternative demand of the appellants, that the judgment which they have appealed from should be affirmed, is founded upon their contention that the case of Young v. Arkansas-Louisiana Gas Company was decided wrong, and that the decision should not be adhered to. It is argued that there was no warrant for the intercalation, by the court, of the word "alone," in the expression in the statute, "stands in the name of the wife," so as to make it read "stands in the name of the wife alone." It is argued with considerable force that when the title to community property stands in the name of both the husband and the wife it "stands in the name of the wife," notwithstanding it stands in the name of the husband also. We must assume, though, that all arguments of that character were considered and disposed of in the deciding of the case. The interpretation which the court put upon the statute was that it was intended to apply only to a case where the wife, having the title in her own name, ought to have an opportunity to assert that the property belonged to her, and not to the community; and hence that the statute was not applicable where the title was so recorded that it was obvious that it was

vested in the community, so that the wife could not deny the fact. The construction which the court put upon the statute in Young v. Arkansas-Louisiana Gas Company was a reasonable one, was arrived at with care and without inadvertence, and established a rule of property, which the public has had the right to rely upon. We decline, therefore, to reconsider the ruling made in Young v. Arkansas-Louisiana Gas Company.

■ Adhering to the decision in Young v. Arkansas-Louisiana Gas Company, we must maintain that the plaintiff Harry Otwell alone was the owner of the property of which he sued for a partition, and therefore that the partition proceedings, which culminated in a sale to Otwell of the property which he already owned, have produced no effect. It is said in article 2443 of the Civil Code that he who is already the owner of a thing cannot validly buy it, and that if he buys it through error, thinking that it is the property of another, the act is null, and the price must be restored to him. Otwell did not pay any price; hence there is nothing to be restored to him. In the case of Scott v. Leonard, 106 La. 317, 30 So. 841, it was held that article 2443 of the Civil Code was applicable to a judicial sale, and hence that a debtor whose property was seized did not acquire a new title by buying the property at the sheriff's sale, through a person interposed. And, in Alderson v. Sparrow, 16 La.Ann. 227, where the plaintiff, by the hypothecary action, undertook to subject the property of the defendant to a judicial mortgage against a former owner of the property, the court cited article 2418 of the

Civil Code of 1825, which is article 2443 in the revision of 1870, in support of the ruling that the defendant, who had bought the property at a partition sale subsequent to the recording of the plaintiff's judicial mortgage, was already the owner of the property by virtue of a tax sale made previous to the recording of the judicial mortgage. After saying that the plaintiff in the hypothecary action was not a party to the partition proceedings and had not acquired any right by virtue of any judicial declaration made in the partition proceedings, the court said:

"Besides, we know of no law which, as a general rule, prevents a party from claiming ownership to property under different titles. In fact, the purchase of one's own property is null. C.C. 2418."

Our conclusion is that the judgment appealed from should be set aside and that the plaintiffs' suit, which was a futile proceeding, should be dismissed. However inconsistent or anomalous it may seem for the plaintiffs, appellees, who procured the judgment, to be asking to have the judgment set aside and their suit dismissed, it is nonetheless inconsistent or anomalous for the defendants, appellants, to be asking to have their appeal dismissed, or, in the alternative, to have the judgment which they have appealed from affirmed.

The judgment is set aside and the suit is dismissed at the cost of the plaintiffs, appellees.

LAND, J., concurs in result.

FOURNET, J., concurs.