*132
 
 ROGERS, Justice.
 

 On February 14, 1933, Mrs. Eugenie Marcour, widow of Ralph Haistre, died in the city of New Orleans, at the residence of Mrs. Eleonore Marcour, widow of Henry Menage, with whom. she had been living for twenty-one years. No will of the decedent being found, after a search therefor was made under order of court; Mrs. Menage, a first cousin of the decedent, applied to be appointed administratrix of the succession, alleging the decedent had left no forced heirs and she was the decedent’s nearest relation in the collateral line. The- application was opposed by Mrs. Louise Marcour, wife of August Nunez, who claimed the appointment as the niece of the decedent, through her father, Oscar Marcour, Jr., a half-brother of Mrs. Haistre. By supplemental petition, Mrs. Menage admitted that the opponent Mrs. August Nunez was the sole legitimate child of Oscar Marcour, Jr., and his- wife, Angela Nunez,- but she alleged that Oscar Marcour, Jr., was an illegitimate child of Oscar Marcour, Sr., the father of Mrs. Haistre, and Marie Nunez, widow of Louis Gutierrez, and that as Oscar Marcour, Jr., was not entitled to inherit from Mrs. Haistre, the opponent, Mrs. August Nunez, having no greater right than her father, was not an heir of Mrs. Haistre and was not entitled to be appointed administratrix of her succession. The case was tried on the issue stated and judgment was rendered dismissing the application of Mrs. Menage and appointing Mrs. Nunez administratrix of Mrs. Haistre’s succession. From this judgment, Mrs. Menage has appealed.
 

 The case turns exclusively on a question of fact. Oscar Marcour,' Sr., was married twice. His first wife was Catherine Toulet and his second wife was Marie Nunez, widow of Louis Gutierrez. Marcour was divorced on statutory grounds by his first wife on May 11, 1889, and on June 25,
 
 1890,
 
 he married his second wife. It is not disputed that Oscar Marcour, Jr., was the son of Oscar -Marcour, Sr., and Marie Nunez Gutierrez; but the appellee contends he was born after the marriage of his father and mother, while the appellant contends he was born before their marriage and during the existence of the marriage between Oscar Marcour, Sr., and Catherine Toulet.
 

 Oscar Marcour, Sr., had two legitimate children by his first wife, namely, Ralph Oscar Marcour, who died without issue, and Eugenie Marcour, who married Ralph Haistre, and who is the decedent. Oscar Marcour, Jr., married Angela Nunez on January 30, 1904, and the appellee, Mrs. August Nunez, is the legitimate issue of that marriage.
 

 A number of witnesses were called and sworn on behalf of both parties to this controversy, and there is a sharp conflict in their testimony. Some of the witnesses called by Mrs. Nunez, the appellee, testified that Oscar Marcour, Jr., was born after the marriage of his parents. Other witnesses testified as to his apparent age, his physical appearance, and to the fact his legitimacy was never questioned in the small community in which the parties lived.
 

 On the other hand, Mrs. Menage, the appellant, produced witnesses who testified that Oscar Marcour, Jr., was born prior to the marriage of his parents, while other witnesses whom she produced testified as to his apparent age and physical appearance. Appellant
 
 *134
 
 also produced and filed In the record certain documentary evidence relating to the question at issue between the parties.
 

 The documentary evidence produced by Mrs. Menage, the appellant, consisted of: (1) A baptismal certificate from the Church of the Annuneiátion, in New Orleans, showing the baptism on March 11,18S3, of Oscar Marcour, Jr., who was born on January 8,1882, child of Oscar Marcour, Sr., and Marie Nunez, the sponsors being Adolph Morel and Melasie Morel; (2) the record of the divorce proceeding brought against Oscar Marcour, Sr., by Catherine Toulet, his first wife; (3) a certified copy of the marriage license issued on October 23, 1889, for the marriage of Oscar 'Marcour, Sr., to Marie Nunez, widow of Louis Gutierrez; (4) a certified copy of the marriage records of St. Bernard parish, showing the marriage on June 25, 1890, of Oscar Marcour, Sr., and Marie Nunez, widow of Louis Gutierrez; (5) a certified copy of the marriage license issued on January 29, 1904, for the marriage of Oscar Marcour, Jr., and Angela Nunez; (6) a certified copy of the marriage records of St. Bernard parish, showing the marriage on January 30, 1904, of Oscar Marcour, Jr., and Angela Nunez; (1) a certificate from the Charity Hospital in New Orleans, showing that Oscar Marcour, Jr., aged 29 years, was admitted to the institution on July 12, 1911, and discharged on July 13, 1911; (8) the record of F. Laudumiey & Co., undertakers, of New Orleans, showing that Oscar Marcour, Jr., son of Oscar Marcour, Sr., and Marie Nunez, a native of St. Bernard parish and by occupation a laborer, died on Monday, July 17, 1911, aged 29 years, date of funeral, Tuesday, July 18, from Mehle avenue and Douglas street, Arabi, St. Bernard parish, La., and that the funeral was ordered by Theodore Serpas of 126 Mehle avenue, Arabi: (9) a copy of the St. Bernard Voice, a newspaper published at Arabi, St. Bernard parish, La., on Saturday, July 22, 1911, containing a news item relative to the death of Oscar Marcour, Jr., and stating that he was 29 years old at the time of his death.
 

 The following witnesses testified on behalf of Mrs. Nunez, the appellee, that Oscar Marcour, Jr., was born subsequent to the marriage of Oscar Marcour, Sr., and Mrs. Marie Nunez, widow of Louis Gutierrez, viz.: Mrs. George Seragine, Hilaire Chalaire, and Mrs. Octavie Hernandez.
 

 Mrs. Seragine, who was Miss Seraphine Gutierrez, was sixty-one years old at the time the case was tried in July, 1933, so that she was about,eighteen years old in 1890, when Oscar Marcour, Sr., married Mrs. Marie Nunez Gutierrez. Mrs. Seragine lived in Tocaville where the parties lived and where the marriage took place. She remembered the occasion but not the time of the marriage. She testified the parties lived at Tocaville for about seven months after the marriage, when they moved to St. Mary, which was about a mile and a half from Tocaville. She also testified that Oscar Marcour, Jr., was born about thirteen or fourteen months after his parents were married, but she was unable to say where the boy was born. She stated that OsMarcour, Jr., played with his cousin Le-Hernandez and other little boys of the neighborhood, and that he was the youngest among them.
 

 Hilaire Chalaire testified he knew Oscar Marcour, Sr., and Mrs. Marie Nunez GutierT
 
 *136
 
 rez. That he knew they were married, hut was not present at the marriage. That Oscar Marcour, Jr., was born “maybe 12 months” after their marriage. That about two years after the marriage he saw the boy for the first time, and he was crawling around. That when Oscar Marcour, Jr., was about twelve years old he went to work for him on his farm, hoeing and plowing, and that he was a big, strong boy. That he went to work for him before his oldest boy was bom, and his oldest boy was thirty-three years old. That if Oscar Marcour were living then (in July, 1933), he thought he would be about forty-five years of age.
 

 Mrs. Octavie Hernandez, a sister of Mrs. Marie Nunez Gutierrez, the second wife of Oscar Marcour, Sr., testified that she was seventy-two years old. She remembered when Oscar Marcour, Sr., married her sister, the widow Gutierrez. She stated that Oscar Marcour, Jr., was born two years after the marriage, and that her son, Leonce Hernandez, who was then forty-one or forty-two years of age, was older than Oscar Marcour, Jr.
 

 Leonce Hernandez, the son of Mrs. Octavie Hernandez, testified that he was forty-four years old; that Oscar Marcour Jr., was about a year and a half younger than he was; and that he was a large boy, always a bigger boy than the witness.
 

 We have no doubt as to the honesty of these witnesses, but we have grave doubt as to whether they are correct in their recollections. Their testimony was given at a time remote from the events about which they testified, and it is opposed by testimony equally credible, attendant circumstances, and surrounding probabilities.
 

 The. substance of the testimony of Mrs. Seragine, Mrs. Hernandez, and Leonce Hernandez is that Oscar Marcour, Jr., was born about two years after the marriage, of Oscar Marcour, Sr., and Marie Nunez Gutierrez, which took place on June 25, 1890. This would fix the date of his birth at approximately June 25, 1892. The undisputed evidence is that Oscar Marcour, Jr., was married to Angela Nunez on January 30, 1904, so that, if the testimony of the witnesses be accepted as correct, at the time of his marriage Oscar Marcour, Jr., was about eléven years and seven months old. This is so improbable that we are forced to decline to accept as true the testimony .tending to establish that fact.
 

 If we accept as correct the testimony of Hilaire Chalaire that he employed Oscar Marcour, Jr., as a boy of twelve years of age to do the hard work of hoeing and plowing on his farm, we are also required to accept as correct his testimony that the employment in question began before the birth of his oldest child, who was thirty-three years old in July, 1933, when the witness testifiéd. According to the testimony of this witness, Oscar Marcour, Jr., if he had lived, would have been forty-five years old in July, 1933. This would fix the date of his birth in July, 1888, or about two years before the marriage of his parents occurred. We fail to see how it can be successfully contended that testimony of this character is sufficient to support the finding as a fact that Oscar Marcour, Jr., was born subsequent to the marriage of Oscar Marcour, Sr., and Mrs. Marie Nunez Gutierrez.
 

 The testimony adduced by appellee to the effect that the legitimacy of Oscar Marcour,
 
 *138
 
 Jr., was never questioned in the Tocaville community is of a purely negative character and can have no weight against the evidence produced by the appellant that Oscar Marcour, Jr., was an illegitimate child. Likewise of doubtful probative value is the testimony of some of appellee’s witnesses that they remember Oscar Marcour, Jr., as a small child running about after his parents’ marriage and that in their opinion he could not have been born prior to the marriage. The witnesses who gave this testimony were themselves very young at the time of which they testify and the facts clearly had no interest for them. Undoubtedly they were sincere in their statements. But nothing tends to obscure the memory so much as the lapse of time. And this is particularly true where the facts testified about occurred in the childhood or early youth of a witness and were devoid of any interest for him. Such testimony is unsafe to act upon except so fa-r as it is borne out by what is. natural and probable under the circumstances taken in connection with the known facts.
 

 If, as contended by the appellee, Oscar Marcour, Jr., was horn normally after the marriage of his parents on June 25,1890, the date of his birth was approximately March 25, 1891, and, therefore, on the date of his marriage on January 30, 1904, he was about twelve years and ten months old. While the fact may be purely within the bounds of reason, we think it is exceedingly improbable, to say the least. On the face of it, such a marriage seems incredible and requires strong corroboration to induce belief in its truth. All appellee’s witnesses testified to the unusual size of Oscar Marcour, Jr., for his age and that he was endowed with a man’s stature when he was only about twelve or thirteen years old. But if Oscar Marcour, Jr., was born some eight years before the marriage of Oscar Marcour, Sr., and Mrs. Marie Nunez Gutierrez, this would account for his appearing to be of unusual stature to the witnesses whose erroneous recollection at this late date is that he was born subsequent to the marriage of his parents.
 

 The license authorizing his marriage was issued to Oscar Marcour, Jr., on January 29, 1930, by the late James D. St. Alexandre, who served for many years as the clerk of court for the parish of St. Bernard. Aside from the presumption that he faithfully performed his official duty, we think it is highly improbable that Mr. St. Alexandre issued a marriage license to a mere child. Nor do we think it likely that A. B. Woodruff, justice of the peace, the officiating magistrate, disregarding the provisions of article 92 of the Civil Code, performed a marriage ceremony for a boy under thirteen years of age.
 

 Apart from this, however, the appellant has produced evidence, which we cannot overlook, tending to prove that Oscar Marcour, Jr., was born in the year 1882.
 

 There is no question there was only one child born of the union, licit or illicit, of Oscar Marcour, Sr., and Mrs. Marie Nunez Gutierrez, and that that child was named Oscar Marcour, Jr. The appellant has produced a certificate from the Church of the Annunciation, on Mandeville street in New Orleans, showing that according to the records of that church, Oscar, born on January 8, 1882, the child of Oscar Marcour, Sr., and Marie Nunez, was baptized on March 11, 1883. It is al
 
 *140
 
 most too plain for argument that if Oscar Marcour, Sr., and Marie Nunez Gutierrez were the parents of only one child named Oscar Marcour, Jr., that that was the child who was born on January 8, 1882, and who was baptized in the Church of the Annueiation, in New Orleans, on March 11, 1883. But whatever doubt thez-e could be in that respect is dissipated by the testimony of Mrs. Melasie Morel, widow of Prank Palliser, who acted as one of the sponsors for Oscar Marcour, Jr., at his baptism. The other sponsor, Adolph Morel, the uncle of Mrs. Melasie Morel Palliser, had died long prior to the trial of this case.
 

 The divorce proceeding brought against Oscar Marcour, Sr., by his first wife, Catherine Toulet, discloses that he deserted her and their two children during the month of September, 1877. That he was a frequenter of houses of prostitution and had illicit relations with a woman, named Carmelite, who was named as co-respondent in the divorce suit. We think the record fairly shows that Oscar Marcour, Sr., engaged in illicit relations with Mrs. Marie Nunez, who was the wife or widow of Louis Gutierrez and was living in St. Bernard parish, shortly after he abandoned his wife and children in the latter part of 1877. At that time travel between the parishes of Orleans and St. Bernard was infrequent and tedious, and it was not unlikely that Marcour lived with Mrs. Gutiezrrez in St. Bernard parish without that fact becoming known to his friends and relatives in New Orleans.
 

 Mrs. Melasie Morel, widow of Prank Palliser, testified that her father became acquainted with Oscar Maz-eour, Sr., duz-ing the Civil War, and that when she was about five years old Marcour had saved her from drowning. That on his visits to New Orleans from St. Bernard parish, Marcour generally stopped at her father’s home. That her family also knew Mrs. Mazrie Nunez Gutierrez. That Oscar Marcour, Sr., and Mrs. Marie Gutierrez called at her home before the baby, Oscar Marcour, Jr., was born. That when Mrs. Gutierrez first brought the child to her home it was a mere baby; and, later, when it was about a year and three or four months old-just beginning to walk — the child was christened. That she and her uncle Adolph Morel stood as sponsors for the child, whom she held in her arms during the ceremony which took place at the Church of the Annunciation, the officiating priest being Father Durier. At that time Mrs. Melasie Morel Palliser was a young lady of about twenty-one years of age and her family and herself were unaware of the fact that Oscar Marcour, Sr., and Marie Nunez were not married. Oscar Marcour, Sr., had told her father that he had a son named Oscar Marcour, Jr., by Marie Nunez, and requested that he permit his daughter Melasie to act as one of the sponsors for the child at his christening. Mrs. Palliser testified the last time she saw the child was when he was about five years old, but that he was the only child resulting from the union of Oscar Marcour, Sr., and Marie Nunez Gutiez-rez and that she was positive as to the identity of the child.
 

 The trial judge thought Mrs. Pálliser’s testimony was improbable, because her father, as an intimate friend of Oscar Marcour, Sr., must have known that in 1883 Oscar Marcour, Sr., was still the husband of Catherine Toulet, and he would not have permitted his twen
 
 *142
 
 ty-one year old daughter to act as the godmother for an illegitimate child. But with all deference to the trial judge’s opinion for which we have the greatest respect, we axe unable to take that view of Mrs. Palliser’s testimony. She was a wholly disinterested witness, and her testimony we think was given fairly and intelligently. She stated that at the time she acted as one of the sponsors for Oscar Marcour, Jr., her family had been led to believe by Oscar Marcour, Sr., that he was married to Marie Nunez. That it was only when the marriage actually took place some years later her family discovered Oscar Marcour, Sr., and Marie Nunez had not been married at the time the child was christened, and that her mother on learning that fact “got after” Marcour for living with Marie Nunez all those years. And the inescapable fact remains, as shown by the church records, that Oscar Marcour, Jr., the child of Oscar Marcour, Sr., and Marie Nunez, was christened on March 11, 1883; that the child was about twelve months old at the time; and that the witness Melasie Morel, later the wife of Frank Palliser, acted as the godmother to the child. And this is so notwithstanding the child was an illegitimate child and that that fact might have been well known to the Morel family, which, however, w.e do not believe was the case.
 

 The testimony of Mrs. Palliser was corroborated by that of Mrs. Menage, testifying in her own behalf. Mrs. Menage testified, substantially, that she and her cousin, Mrs. Haistre, the decedent, lived together for about twenty-one years in the city of New Orleans. That she was raised by her aunt, Mrs. Urania Marcour Gregoire, who was a sister of John Marcour, the father of the witness, and of Oscar Marcour, Sr. That on one occasion Mrs. Marie Nunez Gutierrez called at her aunt’s house to show her Oscar Marcour, Sr.’s boy, but that her aunt would not receive them, stating she only knew Oscar Marcour’s legiti-. mate wife, Catherine Toulet, and her two children. The witness was ten years of age when this incident occurred. This testimony standing alone would be unsafe to act upon, although it is not improbable the incident in question made an impression on the mind of the witness as a child which impression persisted with her in her mature years. But the testimony is corroborated by other facts and incidents disclosed by the record.
 

 Mrs. Menage -deposed that the next time she saw Oscar Marcour, Jr., was in 1894, when he was about twelve years old. That Mrs. Marie Nunez, who at that time was the wife of Oscar Marcour, Sr., worked for her for about three months, and that on one occasion she brought the child to the home of the witness, where he played around all day. The witness stated that -the next time she saw Oscar Marcour, Jr., was one night in October, 1909, when he called at her home and remained several hours. That one of her daugh-_ ters, who afterwards married John J. Delery, was present as was Mr. Delery. That the question of comparing ages came up during the course of conversation, and Oscar Marcour, Jr., stated he was twenty-seven years old. The witness was corroborated as to this incident by both Mr. Delery and her daughter, Mrs. Delery. Mrs. Menage further testified that the next time she saw Oscar Marcour, Jr., was in July, 1911; that he was sick at the time and told her he was going to the Charity Hospital; that a few' days later she
 
 *144
 
 heard he was dead; and that she and the decedent, Mrs. Haistre, went to Arabi, where Oscar Marcour, Jr., was laid out in the house on Mehle avenue, but ‘they did not go to the •funeral, which was held the next day.
 

 Theodore Serpas, a witness fór appellant, testified that he knew both Oscar Marcour, Sr., and Oscar Marcour, Jr. That he often saw them together, and that the older man referred to the younger man as his son. The witness further testified that he knew that Oscar Marcour, Jr., was married, and that he thought Marcour at that time was between twenty-three and twenty-four years old. When asked on what he based his statement, the witness replied it was because he married the year afterwards and was twenty-five years old at the time.
 

 Fritz Horn,’ another witness for appellant, testified that in 1908 he was working at the Crescent City Slaughterhouse and during that year he met Oscar Marcour, Jr., who was also working in the fertilizer plant of the slaughterhouse. His testimony was to the effect that according to his physical appearance Oscar Marcour, Jr., was born prior to the year 1890, when the marriage of his parents occurred.
 

 The records of the Charity Hospital of New Orleans show that on July 12, 1911, Oscar Marcour, Jr., was twenty-nine years old. The record of F. Laudumiey & Co., undertakers, who conducted the funeral of Oscar Marcotir, Jr., on July 18, 1911, and the news item of his death contained in the issue of the St. Bernard Voice of date July 22, 1911, also show that he was twenty-nine years old.
 

 According to the oral and documentary evidence produced by the appellant, Oscar Marcour, Jr., instead of being at the time of his marriage to Angela Nunez a child of twelve years and ten months old as contended by appellee, was a grown man of about twenty-two years of age, as contended by the appellant. We think all the probabilities of the case, as well as the facts proved on the trial thereof, support the contention of the appellant rather than that of the appellee.
 

 If Oscar Marcour, Jr., was about twelve years old when Mrs. Menage saw him in 1894, and was twenty-seven years old in 1897, as he stated to Mrs. Menage and to Mr. and Mrs. Delery, and was twenty-nine years old in 1911, when he entered the Charity Hospital and when he died and'was buried, it is clear he was about twenty-two years old when he was married in 1904. All of which is corroborative of the testimony of Mrs. Palliser and the records of the Church of the Annunciation that Oscar Marcour,' Jr., the father of the opponent herein, was born in year 18S2, long prior to the marriage of his parents.
 

 Counsel for appellee objected to the offer in evidence of the undertaker’s record and the newspaper article, on the ground they were hearsay. But an exception to the rule against the admission of hearsay testimony has been recognized in cases involving pedigree. In such cases hearsay is admissible to prove not only descent and relationship, but also facts as to birth, marriage, .and death, and the date when the events occurred. The exception to the general rule is founded on the necessity which arises from the essentially perishable nature of the probative facts and the very limited number of persons who can be assumed to have either interest in or knowledge of ancient facts of such slight
 
 *146
 
 general importance and of a nature at once so exact and so trivial. The undertaker’s record was made and the newspaper article was written and published at a time unsuspicious, and we think they were admissible, if for no other purpose', as corroborative of other evidence, both oral and documentary, adduced on the trial of the case.
 

 For the reasons assigned, the judgment appealed from is annulled, and it is now ordered that there he judgment in favor of Mrs. Bleonore Marcour, widow of Henry Menage, and against Mrs. Louise Marcour, wife of August Nunez, dismissing the opposition of Mrs. Louise Marcour Nunez to the application of Mrs. Bleonore Marcour Menage to be appointed administratrix of the succession of Mrs. Eugenie Marcour, widow of Ralph Haistre. It is further ordered that Mrs. Bleonore Marcour Menage be appointed administratrix of the succession of Mrs. Eugenie Marcour Haistre, upon complying with the requisites of the law. All costs of this proceeding to be borne by Mrs. Louise Marcour Nunez.