GLADNEY, Judge.
This appeal is from a judgment dismissing an action to annul a probate judgment recognizing defendant as surviving spouse of Anthony (Tony) Dazio and placing her in possession of his estate. Named plaintiffs in the original petition were Joseph S. Dazio, Pauline D. Delfulco and Mary D. Priola, who alleged they were brother and sisters respectively of the decedent, Anthony Dazio, and as such his sole and only heirs. It was averred also that the defendant was never lawfully married to Anthony Dazio. Joseph S. Dazio and Pauline D. Delfulco died before the case was tried and motion was duly made without objection to have Mrs. Doris Witt and Mrs. Louise Savoie substituted as parties plaintiff in lieu of Joseph S. Dazio and Pauline D. Delfulco.
The defendant first pleaded an exception of no cause or right of action which specifically averred the petition was defective in that it failed to negative the status of defendant as a putative wife. This exception was overruled and answer was filed denying plaintiffs were heirs and declaring defendant should be recognized as a putative wife. Following trial a judgment was rendered holding the evidence furnished satisfactory proof the defendant was never the • lawful wife of and did not marry *97 Anthony Dazio in good faith. The court, however, decided sufficient evidence was not adduced to show the relationship of plaintiffs to the deceased, and as a consequence plaintiffs’ suit was dismissed as of non-suit. The case was re-opened upon motion of plaintiffs to permit them to produce proof they were the lawful heirs of the deceased and as such entitled to institute this action. Upon the second trial plaintiffs offered some documentary evidence and the testimony of Johnnie Priola, son of Mary D. Priola and Mrs. Louise Savoie, daughter of Mrs. Pauline Delful-co. The case was again decided adversely to plaintiffs on the ground there was insufficient evidence to show their relationship to the deceased.
In argument on the appeal appellants’ first contention is that the capacity of plaintiffs as heirs must be considered as admitted since defendant failed to raise the issue in limine. The proposition would be well founded if the objection involved simply an exception to the representative capacity of plaintiffs, but we are also herein concerned with the individual rights of plaintiffs even though such rights are derived from heirship. The question here presented involves the interest in litis con-testatio referred to in Article IS of the Code of Practice, which declares an action can only be brought by one having a real and actual interest. In discussing the application of exceptions of want of capacity and want of interest Professor Henry George McMahon in “Parties Litigant in Louisiana”, 11 Tulane Law Review, 527, 545, states the rule:
“Conversely, where the plaintiff appears in an individual capacity, even though he assert derivative rights as heir, donee, assignee, et cetera, the quality in which he appears cannot be put at issue by the exception of want of capacity. Consequently, there is no judicial admission of such quality by the filing of an answer denying such quality, and plaintiff must establish it on the trial of the case on its merits. Furthermore, the failure of plaintiff to allege and prove such quality may be taken advantage of at any stage of the proceedings through the exception of want of interest.”
Absence of a real and actual interest may be taken advantage of at any time during the trial of the suit. Article 346 of the Code of Practice. Where a party litigant fails to produce evidence of interest the court by reason of Article 15 of the Code of Practice may take cognizance thereof and dismiss the claim even though the defendant did not file a formal exception. Otwell v. Vaughan, 1937, 186 La. 911, 173 So. 527; Tyler v. Sutton, La.App., 1951, 51 So.2d 401.
Appellants’ next contention is that the trial court erred when, after careful consideration of all the evidence in the record, including some documentary evidence and the testimony of two witnesses, it held a prima facie case in favor of plaintiffs was not made out. The defendant failed to produce any evidence to refute or rebut that presented by plaintiffs.
Plaintiffs rested their case after the testimony of two witnesses, and the filing of a certified copy of the formal application of Anthony Dazio to marry defendant, a certified copy of the birth record of Marie Dazio and certain photographs. The marriage application dated April 8, 1944, was executed before the Clerk of Court of Rapides Parish. Therein he listed his parents as Charles Dazio and Elizabeth Weber, both deceased. The birth record contains the declaration of Calogero Dazio, executed on March 12, 1888, before the recorder of births and deaths in the City of New Orleans in which it is declared that Marie Dazio was born in New Orleans on February 28, 1888, the lawful issue of “deponent, a native of Palermo, Italy, aged 26 years, occupation shoemaker, and Elizabeth Weber, a native of this City, aged 27 years.” The two documents un-contradicted suffice to indicate Marie Dazio and Anthony Dazio had parents of the same name, that is, Calogero, or Charles Dazio and Elizabeth Weber. Does such evidence supplemented by the testimony of Johnnie Priola and Louise Savoie affirm *98 atively show Mary Priola and 'Anthony Dazio were sister and brother? References are made to excerpts from the testimony of Johnnie Priola and Louise Savoie:
“Q. Mr. Priola, how do you know that your mother has any brothers or sisters? A. I been over here visiting them.
“Q. - But the only reason you know they are the brothers and sisters of yotir mother is because someone 'has •-told you so. Is that correct? A: No, sir!
“Q. Well, how do you know it then? A. I’ve been visiting them. He lives at ‘ Kingsville, Tony.
“Q., But, what I am asking you is, assuming that your mother has any brothers or sisters, the only reason that you would know this would be because someone has told you that they are her brothers and sisters. Is that correct? A. Well, yes sir, she did.
“Q. Your mother told you that? A. Yes, sir.”
On direct examination the witness was asked:
“Q. Now, Mr. Priola, you have seen, yourself in person, all of these people, particularly with regard to all of them except your grandmother?”
He answered:
“A. I was only about three or four years old then.”
His further testimony was:
“Q. With regard to these pictures of Mrs. Delfulco, Joseph Dazio, Tony Dazio and your mother. You have seen all of them in person. Is that right? A. Yes, sir.
“Q. Do you recognize them yourself, from these pictures? A. Yes, sir.”
The witness further stated that he was the son of Mrs. Mary Priola, a resident of Beaumont, Texas; that he was born January 3, 1918, and lives with his, mother who is called Mary and Marie. He also declared his relationship to his aunt, Mrs. Delfulco, and stated Mrs. Delfulco had two daughters, Mrs. Louise Savoie and Mrs. Doris Witt. The witness identified photographs of his mother, Mrs. Delfulco, Anthony Dazio, Joe Dazio and his grandmother, which he said were obtained from his mother and had been in her possession all of his life.
Mrs. Savoie testified ■ the maiden name of her mother was Pauline Dazio; that her mother’s sister was. Mary Priola, her mother’s brothers were Tony and Joe Dazio, and that her mother’s parents were Charles Dazio and Elizabeth Dazio. Concerning her relationship and acquaintance with her -mother’s brothers and sisters, she testified as follows:
“Q. You say that you -know who your mother’s brothers and sister were and let me ask you this. Do you know this because someone told you this? A. No. I’ve seen them in person.
“Q. You saw them in person? A. And she told'me that. And he came to my mother’s home. I remembered him from a kid, a small kid.
“Q. Were you born before he was, are you older? A. No. I am younger.
“Q. Well, then anything that you know about these persons who you say are your mother’s brothers and sisters is from information that has come to you by someone telling you that. Is that correct? A. Well, some of it.
“Q. Well, how did you get any other information beside someone telling you? A. Well, my mother told me Tony was my * * *.
“Q. Well, your mother told you. Is that correct? Now, that is the only way you have any information is because somebody told you. Is that right? A. No, I’ve seen them too, when I was a kid.”
*99 The opinion of the judge a quo recites:
“Counsel for plaintiffs, in his brief, contends that all of the evidence tendered was admissible under the exception to the hearsay .rule, citing as authority David v. Sittig, 1 Mart.,N.S., 147, Succession of Anderson [176 La. 66], 145 So. 270, Succession of Marcour [180 La. 129], 156 So. 198, in Re Gray’s Succession [201 La. 121], 9 So.2d 481, Hubback’s Evidence of Succession (1844), page 652, Aalholm v. People, 211 N.Y. 406, 105 N.E. 647 [L.R.A.1915D, 215], and Wigmore on Evidence, Volume 5, 3rd edition, section 1480 et seq. He also says that the evidence establishes his case.
“Counsel for defendant, in his brief, concedes that the principal of law contended for by the plaintiffs is undeniably correct but that the evidence offered is insufficient under the law.. Specifically, he argues that the testimony of both Mr. Priola and Mrs. Savoie must be eliminated from consideration because of failure to fulfill the requirements of the controlling law. He. complains, also, of plaintiffs’ failure to prove, by persons not vitally interested in the litigation, the general reputation in the community as to the plaintiffs’ relationship to Anthony ‘Tony’ Dazio.
“It is, of course, true that our law recognizes that in cases involving pedigree there is an exception to the rule against the admission of hearsay evidence, and the hearsay evidence is admissible to prove not only descent and relationship, but also facts as to birth, marriage and death, and the dates when the events occurred. Pursuant to recognition of this exception, an undertaker’s • record and a newspaper article were held admissible. Succession of Marcour, supra. Also held admissible are memoranda made in Bibles, or other family registers, and even public reputation. David v. Sit-tig, supra. Additionally acceptable as evidence are the declarations of deceased relatives. Succession of Anderson, supra.
“As to declarations concerning pedigree it appears that our law recognizes these requirements before the hearsay is admissible: (1) The declar-ant must be deceased. (2) They must have been made ante litem, motem, i. e. at the time when there was no motive to distort the truth. (3) The declarant must be. related either by blood or affinity to the family concerning which he speaks. Succession of Anderson, supra.
“In the case at bar the testimony of each of the two witnesses partakes of a double character: (1) that.which the witness knows concerning his own association with the decedent and members of the family of the witness; (2) declarations made to the witness concerning relationship to the decedent, the declarants being related to the witnesses.
“In the' case of Mr. Priola the dé-clarant making statéments to him concerning the members of her family, including the decedent, was his mother who is still living and is a party plaintiff in this litigation. Clearly,,the evidence as to these declarations should be excluded for the simple reason that the person making them is yet alive.
“The testimony of Priola as to his knowledge of and association with the decedent and with his mother’s claimed brother, Joe Dazio, and sister, Mrs. Delfulco, is quite vague. He simply says that he has seen all of them at some unspecified times being able to identify them from photographs which were made before his birth. He knows the- identity of Mrs. Delfulco’s two daughters. He knows that his mother is called by either of the names ‘Mary’ or ‘Marie’. He does not claim to have seen either his maternal grandfather or grandmother, although he knows that his grandfather was called ‘Charles’. He does claim that at some unspecified time he visited the decedent, Tony *100 Dazio. Upon being questioned by-plaintiffs’ counsel as to bis having seen his claimed relatives, including Tony Dazio, his answer was that T was only about three or four years old then.’
“The testimony of Mrs. Savoie as to her knowledge of and association with the decedent and with her mother’s brother, Joe, and sister, Mrs. Priola, is equally vague, it appearing that whatever contact or association the witness had with them was when she was a ‘kid’. Apparently, the real basis of her information was in what had 'been related to her by her mother, Mrs. Delfulco. As to these declarations of family relationship made by Mrs. Delfulco, there is no showing as to when they occurred with respect to whether they were made before or after an interest was developed in the estate of Tony Dazio. These declarations, then, are not admissible and can not be considered.”
The testimony of the witnesses concerned their own relationship and was relevant as to the heirship of plaintiffs. To hold such sworn testimony inadmissible was error. It has such probative force as should be given it. The objections raised affected its weight and not its admissibility. A proper distinction must be made between an unsworn hearsay declaration resorted to to prove an essential fact and the testimony of a witness on matters within his personal knowledge. In the former instance it is proper to require other evidence as a prerequisite whereas evidence of the latter sort rests on its own foundation. 31 C.J.S., Verbo Evidence, § 226, states the rule thus:
“Any person who is a competent witness may testify on a matter of pedigree as to a declaration which was heard by him.
“With regard to reputation in the family, however, although there is some authority to the contrary, it is usually held that the reporting witness must be a member of the family by birth or marriage, and that such reputation cannot be proved by neighbors or other members of the community; but a witness whose knowledge of family matters was derived from intimate acquaintance with the family may testify as to facts of family history, such evidence being personal knowledge rather than mere hearsay.
“Testimony concerning one’s self. It has been held proper, where the evidence is otherwise competent, for one to testify to facts of family history which relate to him, such as the identity of his parents, or other relations, or the place of his birth, or, as appears in infra § 227 b, his age.” 31 C.J.S., Evidence, § 226, pp. 969, 970.
A prima facie showing of heirship of plaintiffs to Anthony Dazio is made out. The evidence, we think, suffices to prove Calogero or Charles Dazio and Elizabeth Weber were the parents of Anthony, Joe, Pauline and Marie or Mary Dazio; and that Mary Dazio Priola, Mrs. Louise Savoie and Mrs. Doris Witt, the plaintiffs herein, are heirs at law of Anthony Dazio and as such entitled to institute this suit.
The district court held the defendant was not in good faith when she married Anthony Dazio and therefore, she did not attain the status of putative wife. For reasons not controverted by defendant the marriage between the deceased Anthony Dazio and the defendant was an absolute nullity.
From our findings herein it follows the judgment of dismissal from which appealed should be reversed and judgment rendered in favor of plaintiffs, appellants.
It is, therefore, ordered, adjudged and decreed that the judgment from which appealed be and is hereby annulled, reversed and set aside, and it is now ordered that there be judgment in favor of Mrs. Mary D. Priola, Mrs. Doris Witt and Mrs. Louise Savoie, and against the defendant, Mrs. Katie M. Wainwright, decreeing to be null *101 and void the judgment dated November 13, 1953, rendered in the probate suit No. 7915, on the docket of the Ninth Judicial District Court in and for the Parish of Rapides, State of Louisiana, entitled succession of Anthony “Tony” Dazio.
It is further ordered that defendant pay all costs of this suit, including costs of appeal.