499 So.2d 492 (1986)
SUCCESSION OF William H. RODGERS. and
Martye Jean Rodgers STUART, et al., Appellants,
v.
Gracie Wheeler RODGERS, et al., Appellee.
Nos. 18,181-CA, 18,182-CA.
Court of Appeal of Louisiana, Second Circuit.
December 3, 1986.
*493 Hunter & Jack by Orie Hunter, III, Frances Baker Jack, Shreveport, for appellants.
Wallace & Southerland by James D. Southerland, Benton, Bodenheimer, Jones, Klotz & Simmons by F. John Reeks, Jr., Shreveport, for appellee.
Before JASPER E. JONES, SEXTON and LINDSAY, JJ.
LINDSAY, Judge.
Plaintiffs filed suit to annul a judgment of possession in the succession of their alleged grandfather and filed suit for an accounting from the defendants for all mineral production, revenues and royalties from the immovable property of the succession. The suits were consolidated for trial. The trial court found in favor of defendants and dismissed plaintiffs' claims. Plaintiffs appeal. For the following reasons we affirm the trial court judgment.

FACTS
On November 21, 1968, William H. Rodgers, Sr. died intestate in Bossier Parish survived by his wife, Gracie Wheeler Rodgers, and six children, Inez Rodgers Felknor, Myrtice A. Rodgers Williamson, Harold V. Rodgers, Mireace I. Rodgers Harville, Billy J. Rodgers Curry, and William H. Rodgers, Jr. William H. Rodgers, Sr. was predeceased by one son, Marvin John Rodgers, who died December 7, 1962. According to the pleadings, Crystal Oil Company obtained a lease on the immovable property left by William H. Rodgers, Sr., and on this property an oil well was completed and has been in production since March, 1984.
On June 21, 1984, the widow and surviving children of William H. Rodgers, Sr. obtained a judgment of possession in his succession. In their petition they alleged that Marvin John Rodgers was married but once and then to Hazel Ashday Rodgers and that no legitimate children were born of that marriage. Hazel Rodgers died May 27, 1962.
The plaintiffs, Martye Jean Rodgers Stuart and Marvin Janelle Rodgers Bentrup, filed suit against the heirs of William Rodgers, Sr. to annul the judgment of possession. Plaintiffs filed another suit against the Rodgers heirs and Crystal Oil Co. for an accounting for the production, revenues and royalties from the immovable property, claiming that Marvin John Rodgers was their father and that they were entitled by representation to be recognized as heirs of William H. Rodgers, Sr.
Exceptions of prematurity, prescription, no right of action, and vagueness were filed by the defendants. The exceptions were referred to the merits and the suits were consolidated for trial.
A joint stipulation of fact was entered into by the parties. The stipulation established the following facts: William H. Rodgers, Sr. and Gracie Wheeler Rodgers were married and had seven children. All those children survived William H. Rodgers, Sr., except Marvin John Rodgers who died in Texas on December 7, 1962. Marvin John Rodgers married Hazel Ashday Rodgers in 1951 and the marriage terminated upon her death on May 27, 1962. No children were born of this marriage. The plaintiff, Martye Jean Rodgers, was born in Louisiana March 31, 1961 and the other plaintiff, Marvin Janelle Rodgers, was born in Texas on February 8, 1963. The parties also stipulated that the plaintiffs' mother was Mary Evelyn Spillers.
Testimony at the trial revealed that Marvin John Rodgers ceased living with Hazel Rodgers sometime in the late 1950's. He then met the plaintiffs' mother, Mary Evelyn Spillers in Plain Dealing, Louisiana in 1958. Mary Evelyn Spillers testified that she and Marvin John Rodgers began living *494 together in Louisiana in 1959 and that in 1961 she and Marvin John had a daughter, Martye Jean. She also testified that later in 1961 she, Marvin and Martye Jean moved to Irving, Texas. In November, 1962 Marvin John bought a house in Euless, Texas. She testified that she and Marvin John, with their daughter Martye Jean, lived together in Texas as husband and wife and that she became pregnant with another child, Marvin Janelle Rodgers. On December 7, 1962 Marvin John died of a heart attack. Marvin Janelle was born two months after Marvin John's death.
In the trial court, plaintiffs did not seek to establish their filiation to Marvin John Rogers, but rather sought to establish that Marvin John Rodgers and Mary Evelyn Spillers entered into a common law marriage, valid under the law of Texas, and therefore the plaintiffs are the legitimate heirs of Marvin John Rodgers. Among the items of evidence sought to be introduced by plaintiffs at the trial was a funeral book containing the obituary of Marvin John Rodgers which was published in a local newspaper, listing as his survivors his wife and his daughter, Martye Jean, as well as stepchildren, who were the children of Mary Evelyn Spillers by a prior marriage. The trial court ruled that no proper foundation had been laid for the introduction of this newspaper article and found it to be inadmissible hearsay.
The defendants contended that no valid marriage existed between Marvin John and Mary and that no valid common law marriage existed under Texas law because Marvin John and Mary Evelyn Spillers did not live together continuously nor did they hold themselves out to the public to be husband and wife.
The trial court entered judgment in favor of the defendants, dismissing plaintiffs' claims. The court found that the plaintiffs were the natural children of Marvin John Rodgers but noted that the issue before the court was not proof of filiation, but proof that plaintiffs were the legitimate heirs of Marvin John Rodgers. The court stated that under the law of Texas, to prove a common law marriage, it must be shown by a preponderance of the evidence that the parties agreed to be husband and wife at a time when there was no impediment to their marriage, that they cohabitated as such, and that they held themselves out to the public to be husband and wife. The court found that prior to the death of Hazel Ashday Rodgers, the legal wife of Marvin John Rodgers, there could be no common law marriage. The court also found that even though Mary Evelyn Spillers and Marvin John Rodgers did cohabitate, the parties did not hold themselves out to the public to be husband and wife and therefore no common law marriage existed. The trial court entered judgment in favor of the defendants dismissing the plaintiff's claims.
On appeal plaintiffs contend that the trial court erred in failing to admit into evidence the newspaper article listing the survivors of Marvin John Rodgers. They also contend that the trial court erred in finding that no common law marriage existed between Mary Evelyn Spillers and Marvin John Rodgers.

ADMISSIBILITY OF NEWSPAPER ARTICLE
Plaintiffs assert the trial court erred in failing to admit into evidence a book from the funeral of Marvin John Rodgers containing a copy of his obituary which appeared in a local newspaper at the time of his death. An offer of proof was made and the funeral book and newspaper article were placed in the record. The article lists his survivors as his wife, a daughter, Martye Jean Rodgers, and four stepchildren. The trial court found the article was hearsay and that a proper foundation was not laid for its admissibility. The trial court reasoned that the plaintiffs were required to show who authored the article and, absent such a showing, a proper foundation for its admissibility had not been laid.
One of the oldest exceptions to the hearsay rule encompasses reputation and statements about family history and pedigree. McCormick on Evidence, 2d Ed. *495 § 322 (1972). In such cases, hearsay is admissible to prove not only descent and relationship, but also facts as to birth, marriage and death, and the date when these events occurred. Succession of Anderson, 176 La. 66, 145 So. 270 (1932); In Re Gray's Succession, 201 La. 121, So.2d 481 (1982); IMC Exploration Co. v. Henderson, 419 So.2d 490 (La.App. 2d Cir. 1982), writ denied 423 So.2d 1149, 1150 (La.1982); Dazio v. Wainwright, 81 So.2d 96 (La.App. 2d Cir.1955); Succession of White, 85 So.2d 528 (La.App. Orleans 1956). This exception to the hearsay rule is founded on the necessity which arises from the essentially perishable nature of the probative facts and the very limited number of persons who can be assumed to have either an interest in or knowledge of such facts. Generally, a declaration regarding pedigree is admitted only after showing that the declarant is unavailable, the statement was made before the controversy giving rise to the litigation and that there was no apparent motive for the declarant to misrepresent the facts. The exception goes beyond declarations and permits use of contemporary records of family history such as entries in a family bible or on a tombstone even though the author may not be identifiable. Succession of Marcour, 180 La. 129, 156 So. 198 (1934), extended this rule to admit an undertaker's record and newspaper article. The issue in that case was whether a decedent was born prior to or during the lawful marriage of his parents. The court in Marcour found that the article was written and published at a time when no motive existed to distort the truth and it was therefore admissible.
In the present case, even though the author of the newspaper article was not specifically identified, the trial court erred in failing to admit the article. The article was written and published before the present controversy arose and at a time when no motive existed to distort the truth.
Because we believe the newspaper article should have been admitted into evidence and considered by the trial court, we have now considered this evidence in our review of the trial court judgment. Having considered this evidence, we are still of the opinion that the trial court was not clearly wrong in finding that no valid Texas common law marriage existed between the parties, as will be discussed hereafter.

TEXAS COMMON LAW MARRIAGE
As noted by the trial court, the facts clearly reveal that the plaintiffs are the natural children of Marvin John Rodgers. However, in order to be able to inherit from their grandfather, William H. Rodgers, Sr., plaintiffs were required to show that they were the legitimate children of Marvin John Rodgers. The facts in this case arose before the Louisiana Constitution of 1974 giving equal succession rights to illegitimates. Therefore, the law prior to 1974 governs. IMC Exploration Co. v. Henderson, supra. Under that law, illegitimates could not represent a deceased parent in a succession. Shorts v. Daniel, 447 So.2d 522 (La.App. 2d Cir.1984). Therefore, the plaintiffs were required to show that they were the legitimate offspring of Mary Evelyn Spillers and Marvin John Rodgers.
It was not disputed that Mary Evelyn Spillers and Marvin John Rodgers never participated in a legal marriage ceremony. The plaintiffs sought to establish that their parents entered into a common law marriage under the law of the state of Texas. Although Louisiana does not provide for common law marriages, such marriages validly entered into under the laws of another state are given effect in this state under the full faith and credit clause of the United States Constitution. Chivers v. Couch Motor Lines, Inc., 159 So.2d 544 (La.App. 3rd Cir.1964).
Under Texas law, four factors are necessary in order to establish the existence of a common law marriage. There must be no legal impediment to a marriage, the parties must agree together to be husband and wife, the parties must cohabitate, and the parties must hold themselves out to the public to be husband and wife. Parish v. Minvielle, 217 So.2d 684 (La.App. 3rd Cir. *496 1969); Howard v. Howard, 459 S.W.2d 901 (Tex.App. Houston 1970). These factors must be proven by a preponderance of the evidence. Proof by a preponderance of the evidence means that taking the evidence as a whole, such proof shows that the fact or cause sought to be proved is more probable than not. IMC Exploration Co. v. Henderson, supra.
In this case it appears that the parties cohabitated in Louisiana and in Texas. The exact period of time during which the parties lived together is disputed. The marriage of Marvin John Rodgers to Hazel Ashday Rodgers did not terminate until May 27, 1962 when Hazel Rodgers died. Until that time a legal impediment existed to the formation of a common law marriage between Mary Evelyn Spillers and Marvin John Rodgers. Even after the death of Hazel Rodgers, testimony offered by the defendants showed that the parties did not live together at all times.
The next inquiry is whether, after the removal of the impediment to marriage, Mary Evelyn Spillers and Marvin John Rodgers agreed between themselves to be husband and wife. The only evidence regarding this requirement is found in the testimony of Mary Evelyn Spillers. She testified that following the death of Hazel Ashday Rodgers, she and Marvin John Rodgers discussed marriage and felt that no ceremony was necessary and that from that time on they considered themselves to be married. No evidence was offered to rebut the agreement between Mary Evelyn Spillers and Marvin John Rodgers to this effect.
The final inquiry becomes whether Mary Evelyn Spillers and Marvin John Rodgers held themselves out to the public to be husband and wife. Mary Evelyn Spillers testified that Marvin John Rodgers introduced her in public to friends and acquaintances as his wife. She also testified that she saw no other men and that Marvin John Rodgers returned each evening to the house the couple shared. The record also includes the obituary of Marvin John Rodgers listing as survivors his wife and his daughter, Martye Jean, and four stepchildren. The stepchildren were Mary Evelyn Spillers' children from a previous marriage. However, this obituary does not establish any consent on the part of Marvin John Rodgers to hold Mary Evelyn Spillers out to the public as his wife.
On cross examination, Mary Evelyn Spillers testified that she and Marvin John Rodgers had no joint checking account or charge cards nor did her name appear on the papers necessary for the purchase of the house in Euless, Texas. No documentary evidence was offered to establish that Mary Evelyn Spillers was held out to the public as the wife of Marvin John Rodgers. Further, other than the testimony of Judy William Sanders, the daughter of Mary Evelyn Spillers, plaintiff's offered no testimony to establish that the parties presented themselves to the public as husband and wife.
The defense offered the testimony of Richard Moseley, a relative who worked with Marvin John Rodgers in 1962. At that time the witness was fourteen years old. He stated that Marvin John Rodgers dated several women other than Mary Evelyn Spillers during the period of time in question and that Marvin John Rodgers frequently slept in the building used to store paint supplies rather than returning home in the evenings. Moseley also testified that on occasion he accompanied Marvin John Rodgers and others when they went to neighborhood bars during the evening and Rodgers would meet other women. Richard Moseley also described an altercation between Marvin John Rodgers and Mary Evelyn Spillers in which Mary Evelyn Spillers did not want Richard Moseley to enter the house. Moseley testified that Marvin John Rodgers told Mary Evelyn Spillers that they were not married and that she had no hold on him.
Norma Hooper Lemmons, a sister to Richard Moseley, testified that she was working as a waitress at a truck stop in Texas in 1962 at the age of fifteen. She also testified that Marvin John Rodgers brought Mary Evelyn Spillers into the *497 truck stop on one occasion and introduced her as his "lady friend." She also testified that Marvin John Rodgers came into the truck stop with other women including a handicapped woman named Sylvia.
The trial court evidently accorded weight to the testimony of Richard Moseley and Norma Lemmons in arriving at its decision that Mary Evelyn Spillers and Marvin John Rodgers did not hold themselves out to the public as husband and wife. The plaintiffs contend that since these witnesses were brought to court from out of state by the defendants that their testimony was biased. The plaintiffs also contend the trial court should have discounted the testimony of Richard Moseley and Norma Lemmons because of their youth at the time the pertinent events in the case occurred. However, a reviewing court must give great weight to the assessment of witness credibility by the trial court and cannot disturb those evaluations unless found to be clearly wrong. Martin v. Martin, 469 So.2d 1108 (La.App. 2d Cir. 1985); McCarty v. Panzico, 467 So.2d 1229 (La.App. 2d Cir.1985). In this case we do not find that the evaluation by the trial court regarding the credibility of Richard Moseley and Norma Lemmons was clearly wrong.
In light of all the evidence and testimony presented in this case including our review of the obituary notice which was excluded from evidence by the trial court, we believe that plaintiffs failed to show by a preponderance of the evidence that Mary Evelyn Spillers and Marvin John Rodgers held themselves out to the public to be husband and wife. Absent such a showing the plaintiffs were unable to prove a common law marriage between Mary Evelyn Spillers and Marvin John Rodgers. Therefore, the trial court was correct in its conclusion that although plaintiffs were the natural children of Marvin John Rodgers, they were not his legitimate children and not entitled to represent their deceased father in the succession of their grandfather, William H. Rodgers, Sr.

CONCLUSION
For the above stated reasons the judgment of the trial court is affirmed. Costs in this court and in the court below are taxed to the plaintiffs.
AFFIRMED.